JAMES ROLAND WILLIAMS, EMPLOYEE-PLAINTIFF v. SALEM YARNS, DIVISION OF CHESTERFIELD YARN MILLS, EMPLOYER-DEFENDANT, AND THE HOME INDEMNITY COMPANY, CARRIER-DEFENDANT

No. 7420IC560

(Filed 16 October 1974)

1. **Master and Servant § 59— workmen's compensation — assault as accident within meaning of Act**

An assault, although an intentional act, may be an accident within the meaning of the Compensation Act, when it is unexpected and without design on the part of the employee who suffers from it; however, to be compensable, the assault must have had such a connection with the employment that it can be logically found that the nature of the employment created the risk of the attack.

2. **Master and Servant § 59— workmen's compensation — shooting of employee by third person — injury not compensable**

Findings of fact by the deputy commissioner in a workmen's compensation hearing were insufficient to support the conclusion that plaintiff's injury resulted from an accident arising out of his employment where the evidence tended to show that plaintiff was leaving his

Williams v. Salem Yarns

employer's mill with two other employees when he was struck by buckshot from a shotgun fired by a homeowner whose home was across the road from the mill and with whom plaintiff was not acquainted.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission entered on 20 February 1974 in Docket E-8311.

Proceedings under the Workmen's Compensation Act. At the hearing before the Deputy Commissioner, plaintiff's evidence showed: Plaintiff, a first-shift employee, left his employer's mill shortly after completion of his shift at 3:00 p.m. and started walking with two other employees toward the mill parking lot. Before reaching the lot, he was struck by buckshot from a shotgun fired by one Carson Cheek, whose home was across the road and about 250 feet from the mill. Plaintiff was not acquainted with Cheek but knew his name and had spoken in passing. Shortly before the shot, two employees, Carolyn Yow and Sharon Best, had arrived at the parking lot preparatory to going to work on the second shift. Neither of these employees knew Cheek. As Sharon was parking her car, Cheek, standing on his lot across the road, commenced to shout and motion parking instructions to her, using profanity in the process. While Carolyn and Sharon were walking from the parking lot toward the mill, Cheek shouted: "You all ain't nothing but damn sons-of-bitches, every one of you damn sons-of-bitches," and "I'll get you all." At this time no other employees were on the parking lot, and Carolyn and Sharon proceeded into the mill without further incident.

Cheek, called as a witness for defendants, testified that he did not know plaintiff or Carolyn or Sharon that he had been drinking and did not recall helping Sharon park, nor did he recall shouting in the direction of the mill. He testified he had never had a conversation with Sharon or Carolyn, and he stated that he fired the shotgun at a stray dog which was fighting his dog. He admitted he had pled guilty to an assault in connection with the shooting and that he had been placed on probation and ordered to pay $1,000.00 to plaintiff. He also testified that he had never been employed at the mill, had never applied for a job there, and did not know a lot of the employees.

The Deputy Commissioner found and concluded that plaintiff sustained an injury by accident arising out of and in the course of his employment and awarded compensation. On appeal,

the Full Commission affirmed and adopted the opinion and award of the Deputy Commissioner as its own.

 *Boyette & Boyette by M. G. Boyette for plaintiff appellee.*

 *Hedrick, McKnight, Parham, Helms, Kellam & Feerick for defendant appellants.*

 PARKER, Judge.

 With respect to time, place, and circumstances, plaintiff's injuries were sustained in the course of his employment. *Harless v. Flynn,* 1 N.C. App. 448, 162 S.E. 2d 47 (1968). The question presented is whether they also resulted from an accident arising out of his employment. We hold they did not.

**[1, 2]** An assault, although an intentional act, may be an accident within the meaning of the Compensation Act, when it is unexpected and without design on the part of the employee who suffers from it. *Withers v. Black,* 230 N.C. 428, 53 S.E. 2d 668 (1949). To be compensable, however, the assault must have had such a connection with the employment that it can be logically found that the nature of the employment created the risk of the attack. *Robbins v. Nicholson,* 281 N.C. 234, 188 S.E. 2d 350 (1972). No such connection has been shown by the evidence in the present case.

 The Deputy Commissioner did make the following findings of fact which, if supported by any evidence, might serve to show some slight connection between the assault and plaintiff's employment in this case.

  "He [Cheek] had a 12-gauge shotgun loaded with buckshot No. 6 in his hands when he made the shouting statement [heard by Carolyn and Sharon while they were at the parking lot]. Several other second shift employees were in the parking lot at this time."

 Had this finding been supported by evidence it might be inferred that Cheek held such animus toward all employees at the mill that an assault upon one of them might be considered as arising out of his employment. The evidence, however, not only does not support the above quoted finding but directly contradicts it. The only witnesses who testified concerning these events were Carolyn, Sharon and Cheek. Carolyn testified:

  "I didn't see any type of weapon that Mr. Cheek had. . . .

"I guess he was shouting to everybody, me and Sharon, both of us were out there. There was no one else out there that I know of. They come up and they went in the mill. We were the only two standing out there and he was shouting at us.

\*   \*   \*   \*   \*

"I don't know of my own knowledge whether or not that language was directed to me or to Sharon or to anyone else."

Sharon testified:

"They were a few girls that went in before we did. They weren't anybody out there whenever that happened. No other employees were coming out at that time."

Cheek denied making the threatening statements at all.

When the Deputy Commissioner's factual findings which are not supported by any evidence are eliminated, the remaining factual findings furnish no basis from which it may be logically inferred that the assault in this case had any connection with plaintiff's employment.

The award of the Industrial Commission is

Reversed.

Judges CAMPBELL and VAUGHN concur.