Argued and submitted January 3, decision of the Court of Appeals reversed and case remanded to the Workers' Compensation Board May 9, 1996

In the Matter of the Compensation of
Brian W. Andrews, Claimant.

Brian W. ANDREWS,
*Petitioner on Review,*

*v.*

TEKTRONIX, INC.,
Sedgwick James & Co.,
Associated Plumbing & SAIF Corporation,
*Respondents on Review.*

(WCB 93-08329, 93-05174; CA A85441; SC S42504)

915 P2d 972

James L. Edmunson, Eugene, argued the cause for petitioner on review. With him on the brief was James Francesconi, Portland.

Michael O. Whitty, Special Assistant Attorney General, Salem, argued the cause for respondent on review SAIF Corporation as insurer of Associated Plumbing. James W. Moller, Special Assistant Attorney General, Salem, filed the brief. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Deborah Sather, Portland, waived oral argument for respondents on review Tektronix, Inc., and Sedgwick James & Co.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Durham, Justices.**

GILLETTE, J.

---

** Graber, J., did not participate in this decision.

## GILLETTE, J.

In this workers' compensation case, employer instructed claimant to avoid heavy lifting on the job. Claimant was injured when he fell (or slipped) while carrying a heavy piece of equipment at a job site. The Workers' Compensation Board denied compensability, concluding that claimant's violation of his employer's instructions placed his injury outside the course and scope of claimant's employment. The Court of Appeals affirmed that decision, and claimant petitioned for review by this court. We allowed the petition to decide whether and when an employee's failure to follow an employer's instructions may bar compensation of an ensuing injury. We hold that such instructions did not create a *per se* bar to recovery here.

Claimant had a history of employment-related back injuries. He first injured his back in 1983, while employed by Tektronix, Inc. He received workers' compensation benefits for that injury. That claim was closed in 1986. Claimant reopened the claim on two separate occasions, claiming aggravation of the original injury.

In May 1992, claimant's present employer, Associated Plumbing, hired him to purchase and pick up equipment and other supplies, deliver parts to job sites, and to act as a plumber's assistant. In October 1992, he told his supervisor about his prior back injuries and his concerns that his back problems ultimately might pose a threat to his job. His supervisor told him at that time that lifting was not an essential part of his job and that he should not engage in heavy lifting in the future. The supervisor also instructed Associated Plumbing's main supplier that, when claimant came to pick up supplies, the supplier, rather than claimant, should load them onto Associated Plumbing's truck.

In March 1993, claimant was dispatched to a newly constructed restaurant to deliver some parts to a coworker who was installing plumbing there. When claimant arrived, his coworker was away at lunch. While claimant awaited his coworker's return, an employee of a coffee company approached him and asked if he would assist in carrying a 200-pound espresso machine into the restaurant. Claimant

agreed and, as indicated, suffered an injury to his back while engaged in that task.

SAIF, Associated Plumbing's insurer, denied responsibility for, and the compensability of, the injury. Shortly thereafter, Tektronix, apparently responding to the possibility that the injury might be deemed another aggravation of claimant's 1983 injury at Tektronix, also issued a denial.

Claimant sought a hearing before a workers' compensation referee. After hearing the evidence, the referee concluded that, under the totality of the circumstances, claimant's back injury arose out of and in the course of his employment with Associated Plumbing and was, therefore, compensable. The referee stated in part:

> "While the claimant's employer in this case would not have condoned the specific activity claimant was engaged in on the day of injury, it is clear from the testimony of claimant, Mr. Scovil and claimant's employer that it is a practice and custom among the trades to voluntarily assist each other when loading and unloading. Claimant was expected to receive help when he delivered heavy hot water heaters to the job sites and Mr. Scovil testified that he expected others to help him when he was delivering heavy equipment.

> "* * * * *

> "Given the testimony at hearing regarding the custom and practice of assisting noncoworkers, I conclude that the activity was an ordinary risk of claimant's employment[.]"

The referee also concluded that claimant's 1992 injury was distinct and separate from the 1983 Tektronix injury and, therefore, that Associated Plumbing, rather than Tektronix, was responsible.

On SAIF's request for review, the Workers' Compensation Board reversed. The Board first stated that Associated Plumbing had prohibited claimant from lifting heavy equipment and that claimant had violated that restriction by helping to carry the espresso machine. The Board then identified the following test, which is drawn from Professor Larson's treatise on workers' compensation law, as the appropriate

rule for determining when an injury that results from an employee's failure to follow the employer's instructions is compensable:

"When misconduct involves a prohibited overstepping of the boundaries defining the *ultimate work* to be done by the claimant, the prohibited act is outside the course of employment. But when misconduct involves a violation of regulations or prohibitions relating to the *method* of accomplishing that ultimate work, the act remains within the course of employment."

Arthur Larson, 1A *Workmen's Compensation Law* § 31.00, 6-10 (1995) (emphasis in original).

Applying that rule to its finding that claimant had violated his employer's no heavy lifting instruction, the Board concluded that claimant's injury occurred outside the course and scope of his employment and was, consequently, noncompensable:

"Here, * * *, the employer's prohibition against heavy lifting actually established the boundaries of claimant's ultimate work duties. That is, it contemplated that claimant would perform his usual duties *with the exception of those activities that involved heavy lifting*. On this record, we conclude that claimant's violation of the employer's heavy lifting rule involved a prohibited overstepping of the boundaries defining his ultimate work. Therefore, we conclude that claimant's injuries occurred outside the course and scope of his employment."

Claimant sought judicial review of that conclusion, as well as the analysis that supported it, in the Court of Appeals. That court affirmed without opinion. *Andrews v. Tektronix, Inc.*, 134 Or App 628, 894 P2d 1268 (1995). Claimant now renews his challenges to the Board's reasoning and conclusions here.

It is unfortunate, we think, that the parties in this case, along with the Board and even the legal scholar whose summary of the law the Board relied on, have insisted on referring to the issue presented here in terms of employee "misconduct," a word that carries with it a connotation of blameworthiness or fault. Fault is an idea that has no place in our workers' compensation scheme: Indeed, if our workers'

compensation laws stand for anything, it is that fault is irrelevant in determining a worker's entitlement to compensation. *See, e.g., Ore-Ida Foods v. Indian Head*, 290 Or 909, 918, 627 P2d 469 (1980) (under Oregon Workers' Compensation Law, employer is liable for compensation "[w]hether the cause be the fault of the employer, the fault of the worker, the fault of a third person, or the fault of no one"); *McDonough v. National Hosp. Ass'n*, 134 Or 451, 460, 294 P 351 (1930) (right to compensation "is not dependent upon any negligence or wrongful act of the employer but is based wholly upon the fact of employment").

It would be foolish, of course, to dismiss an otherwise legitimate analytical rule purely on the basis of the terminology that it employs. If, despite that terminology, the rule actually carried out the intention of the legislature with respect to entitlement to workers' compensation, we could not say that the Board was wrong in embracing it. If, on the other hand, the rule served to import into the workers' compensation scheme a concept—fault—that the legislature has rejected as irrelevant to that scheme, or was otherwise incompatible with the legislature's intent with regard to compensability, we could not allow it, or any decision that relied on it, to stand.

■ The essential legislative statement regarding entitlement to workers' compensation is found at ORS 656.005(7)(a).[1] To be entitled to workers' compensation under

---

[1] The legislature amended ORS 656.005 in 1995. Or Laws 1995, ch 332, § 1. Those amendments do not affect our legal analysis in this case. For ease of reference we refer throughout to the current version of the statute.

ORS 656.005(7)(a) provides:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition.

"(B) If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability

that provision, an injured worker need only establish that his or her injury arose "out of and in the course of employment." *See also Clark v. U.S. Plywood,* 288 Or 255, 259, 605 P2d 265 (1980) ("All that a claimant must prove is that the injury arose 'out of and in the course of employment.' ").

 We previously have described ORS 656.005(7)(a) as setting out "two elements of a single inquiry[.]" *Norpac Foods, Inc. v. Gilmore,* 318 Or 363, 366, 867 P2d 1373 (1994). One element, the requirement that the injury occur "in the course of employment," concerns the time, place, and circumstances of the injury. *Id.* The other requirement, that the injury "arise out of" the worker's employment, examines the causal connection between the injury and the employment. *Id.* Although both elements must be evaluated, neither is dispositive: Ultimately, they merely serve as analytical tools for determining whether, "in light of the policy for which [that] determination is to be made[,]" the *connection* between the

---

of the combined condition or the major contributing cause of the need for treatment of the combined condition."

Claimant advances one argument that treats ORS 656.005(7)(*b*), rather than ORS 656.005(7)(*a*), as the essential legislative statement regarding compensability. ORS 656.005(7)(b) provides:

" 'Compensable injury' *does not* include:

"(A) Injury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties;

"(B) Injury incurred while engaging in or performing, or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure; or

"(C) Injury the major contributing cause of which is demonstrated to be by a preponderance of the evidence the injured worker's consumption of alcoholic beverages or the unlawful consumption of any controlled substance, unless the employer permitted, encouraged or had actual knowledge of such consumption."

(Emphasis added.) Claimant argues, in particular, that ORS 656.005(7)(b) expresses a complete and exclusive legislative policy regarding the effect of an employee's conduct on the compensability of a workers' compensation claim: The three circumstances described therein, and only those circumstances, provide grounds for concluding that an at-work injury is noncompensable. Consequently (claimant argues), noncompliance with an employer's instructions, which is not one of the three types of conduct described at ORS 656.005(7)(b), cannot render an injury noncompensable.

Claimant's theory fails to account for the legislature's definition of "compensable injury" at ORS 656.005(7)(a). Paragraph (7)(a) is the primary definition of compensability. Paragraph (7)(b) states grounds for exclusion that are *additional* to those that are inherent in the primary definition found in paragraph (7)(a).

injury and the employment is sufficient to warrant compensation. *Rogers v. SAIF*, 289 Or 633, 642, 616 P2d 485 (1980).[2]

■ In particular factual circumstances, various tests may prove helpful in measuring and conceptualizing the strength of the connection between the claimant's injury and employment. Still, the ultimate test is the same: Considering all the pertinent circumstances, are the temporal, spatial, circumstantial, and causal connections between the claimant's injury and employment sufficient to justify compensation, when sufficiency is evaluated in the light of the Act's policy of providing financial protection to workers who are injured in the course of employment, regardless of fault? Thus, when confronted with a test that purports to determine whether an injury sustained under a particular set of factual circumstances is compensable, we must ask, "Is the test compatible with that formulation?"

SAIF contends that the "misconduct" rule at issue in this case *is* compatible with that formulation. In so arguing, SAIF acknowledges the basic principle inherent in the statutory test, *viz.*, that compensability is purely a function of the claimant's status as a worker. SAIF asserts, however, that that status is, in turn, a function of the employer's right to "direct and control" the claimant's activities: "When a worker's activities are such that the worker can no longer be said to act subject to the employer's right of direction and control, then the employee's status as a subject worker has been interrupted."

From that standpoint, SAIF argues, it should be evident that a claimant's violation of a work rule may render an ensuing injury noncompensable, not because the violation demonstrates that the injury was the claimant's fault or is otherwise blameworthy, but because it demonstrates a rejection by the claimant of the employer's right of direction and control and, consequently, of the claimant's status as a worker.

---

[2] *Rogers* describes that policy as " 'the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer.' " 289 Or at 643 (quoting *Allen v. SAIF*, 29 Or App 631, 633, 564 P2d 1086 (1977)).

■ Because we disagree with the basic contention underlying SAIF's argument, we do not accept the conclusion that SAIF draws from that argument. Although it is true that, for general purposes, the Workers' Compensation Act defines the term "worker" in terms of the employer's "direction and control,"[3] it is also clear that, for purposes of determining whether a claimant's injury is *compensable*, his or her status as a worker does not depend on demonstrable submission to the employer's right of direction and control at the precise moment in time that the injury was sustained. This court's opinions on the issue of at-work "horseplay" are a case in point: Employees who engage in on-the-job horseplay can hardly be said to be subject to the direction and control of their employers for the period of time that they are so engaged, yet injuries sustained in the course of horseplay may nevertheless be deemed to "arise out of and in the course of employment." *See, e.g., Stark v. State Industrial Acc. Com.*, 103 Or 80, 98, 204 P 151 (1922) (shipbuilder injured while participating in scuffle with fellow workman using air hoses arose out of and in the course of employment).

■ From the foregoing, we think that it is inescapable that a *general* rule denying compensation for injuries sustained as the result of a worker's failure to follow an employer's instructions is not compatible with the Worker's Compensation Act. However, we still must consider the validity of Professor Larson's rule, which is far more limited. That rule purports to deny compensability only when a certain type of prohibition—a "prohibited overstepping of the boundaries defining the [claimant's] *ultimate work*"—is involved. Larson, 1A *Workmen's Compensation Law* § 31.00 at 6-10 (emphasis in original).

■ We cannot say that the quoted rule is inconsistent with the work-connectedness test that has informed our previous decisions. An employee who is injured while engaged in a prohibited activity that is outside the boundaries defining his or her ultimate work cannot prevail on a claim that the

---

[3] ORS 656.005(30) defines "worker" as "any person * * * who engages to furnish services for a remuneration, subject to the direction and control of an employer * * *." The definition of "employer" at ORS 656.005(13) is complementary: it defines "employer" as "any person * * * who contracts to pay a remuneration for and secures the right to direct and control the services of any person."

injury is work connected. But neither can we say that that rule adds anything of value to the analysis. It merely states what we already know: that, regardless whether it is forbidden or condoned, an activity that is outside the boundaries of a claimant's job is not part of the claimant's job. Ultimately, then, Professor Larson's rule, as adopted by the Board, does little, if anything, to alter the basic work-connectedness test of compensability that our workers' compensation statute requires.

Although we conclude that Professor Larson's rule is consistent with the statutory standard for compensability, we cannot say the same for the *Board*'s particular gloss on that rule. In that regard, we note that the Board did not attempt to determine, in the first instance, whether the conduct that occasioned claimant's injury occurred while claimant was engaged in a job-related activity. Instead, the Board treated its determination that claimant had disobeyed his employer's instruction as a complete substitute for an analysis of work-connectedness. Thus, under the Board's version of the "misconduct" rule, work-connectedness and, consequently, compensability, may be decided entirely on the basis of a single fact—the worker's obedience to the employer's instructions—at least insofar as those instructions purport to define the boundaries of the claimant's ultimate work.[4]

■ We see at least two problems with the Board's approach. First, it assumes that an act loses its work-connectedness solely by virtue of an employer's instruction not to perform it. That assumption is unduly simplistic and unjustified: Even when a worker is injured while engaged in a task that the employer appears to have removed from the worker's job description, the injury still may bear a sufficient connection to the worker's assigned tasks to warrant a conclusion that the injury is compensable.

---

[4] In the Board's view, the employer's instruction to avoid heavy lifting "established the boundaries of [his] ultimate work duties" because it effectively removed heavy lifting from claimant's job description: It "contemplated that claimant would perform his usual duties with the exception of those activities that involved heavy lifting." (Emphasis deleted.) By disobeying that instruction, claimant "overstepp[ed] the boundaries defining his ultimate work," thus rendering the ensuing injury noncompensable.

In addition, because the Board's approach makes compensability turn entirely on a factor that is loaded with implications of blameworthiness, it suggests that compensability is, or at least can be, a function of fault. As previously indicated, that suggestion long has been rejected by the legislature.

■ In view of those problems, we are not prepared to say that the simple fact of disobedience to an employer's orders is of such overarching significance that it, alone, can render an ensuing injury noncompensable. Even when an order purports to set the boundaries of the claimant's ultimate work, a worker's disobedience is not necessarily determinative.

■■ That is not to say that an employer's delineation of what does and does not constitute an employee's job is inconsequential. The Workers' Compensation Act does not purport to apportion liability for a worker's injuries on the basis of a mere *nominal* relationship between the worker and employer. But the facts that an employer has instructed a worker to avoid certain work, and that the worker's injury occurred when he or she disregarded that instruction, are only two of many factors that must be considered in the overall calculation of work-connectedness. Among the additional factors are the degree of connection between what the worker is authorized to do and is forbidden to do, the degree of judgment and latitude normally given the worker, workplace customs and practices, the relative risk to the worker when compared to the benefit to the employer, and the like. Moreover, when a worker's failure to follow a work-defining instruction *is* taken into consideration, the manner in which the instruction was conveyed, and the worker's consequent perception of the instruction's purpose and scope, also must be considered.

To conclude otherwise would be to approve a scheme whereby employers could insulate themselves from workers' compensation liability simply by providing the narrowest possible job descriptions to their employees, and instructing them to avoid *any* work that is not in either scope or manner precisely within the tasks thus assigned. Such an arrangement would be inconsistent with the previously recognized policy underlying the Workers' Compensation Act, *viz.*, the protection of workers from the financial consequences of the

injuries that are a common byproduct of production, regardless of fault.

■ We conclude, then, that, regardless of the type of rule involved, an employee's violation of an employment rule does not render his or her claim *per se* noncompensable. The Board's contrary conclusion was error. The Board should have decided the question of compensability by deciding, in the first instance, whether claimant was engaged in an activity that was within the boundaries of his ultimate work. That determination is made, of course, by evaluating all the factors that are pertinent to the question of work-connectedness, and weighing those factors in the light of the policy underlying the Workers' Compensation Act. *Rogers*, 289 Or at 643.

The Board's order does not address the question of work-connectedness, as we have explained it. Although the workers' compensation referee concluded that claimant's act of assisting in carrying the espresso machine was the practice or custom on such job sites, made findings that support that conclusion, and then concluded that claimant's injury was work connected, the Board chose to ignore that issue and focused, instead, on claimant's failure to comply with his employer's instructions. Because we have no way of knowing whether the Board would have agreed with the referee's ultimate findings and conclusions with regard to the issue of work-connectedness, including the issue of custom and practice in the trade, we remand to the Board to address that question.

The decision of the Court of Appeals is reversed. The case is remanded to the Workers' Compensation Board for further proceedings.