Argued and submitted March 5, decision of the Court of Appeals and order of the
Workers' Compensation Board affirmed August 7, 1997

In the Matter of the Compensation of
Jody N. HAYES, Claimant.

FRED MEYER, INC.,
*Petitioner on Review,*

*v.*

Jody N. HAYES,
*Respondent on Review.*

(WCB 94-07627; CA A89536; SC S43425)

943 P2d 197

O.R. Skopil, III, of Moscato, Skopil & Hallock, Portland, argued the cause and filed the petition for petitioner on review.

Robert E. Nelson, Gresham, argued the cause and filed the response for respondent on review.

Michael O. Whitty, Salem, filed a brief on behalf of *amici curiae* SAIF Corporation and Coos County School District #13.

VAN HOOMISSEN, J.

Gillette, J., concurred and filed an opinion.

Graber, J., dissented and filed an opinion in which Carson, C. J., joined.

## VAN HOOMISSEN, J.

■ The issue in this workers' compensation case is whether claimant's injury, which occurred when she was attacked in her employer's parking lot, arose "out of and in the course of [her] employment."[1] The Workers' Compensation Board (Board) held that it did and, therefore, that claimant's injury was compensable. The Court of Appeals affirmed without opinion. *Fred Meyer, Inc. v. Hayes*, 141 Or App 439, 917 P2d 1077 (1996). We review pursuant to ORS 656.298(6) and 183.482(8)(a) and (c).[2] For the reasons that follow, we also affirm.

On review, the facts are not contested. Claimant is a retail department manager for Fred Meyer, Inc. (employer). At 8 p.m. on March 20, 1994, she completed her shift. For the next 15 to 20 minutes, claimant shopped in employer's grocery department and purchased items for her personal use.[3] After completing her shopping, she left the store through the grocery exit and walked directly toward her car, pushing a cart containing groceries. When claimant left the store, the parking lot was about half full of cars. Claimant's car was parked about 72 yards from the grocery exit in an area on the perimeter of employer's parking lot where employer had directed its employees to park. That area of the parking lot was not well lit. As claimant approached her car, she was attacked by a man with a knife. The assailant stabbed her in the neck and right thumb. Claimant escaped and ran back

---

[1] ORS 656.005(7)(a) provides, in part:

"A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death[.]"

[2] Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding. ORS 183.482(8)(c). The court must evaluate evidence against the finding as well as the evidence supporting it to determine whether substantial evidence exists to support that finding. If a finding is reasonable in the light of countervailing as well as supporting evidence, the finding is supported by substantial evidence. *See Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990) (applying "substantial evidence" standard of review).

[3] Claimant did not work in employer's grocery department. The record does not indicate whether employer had any company policy regarding employees shopping in the store. Employer does not argue that claimant violated any work rule by shopping before leaving employer's premises.

into the store. Claimant's injuries required medical treatment and resulted in disability. Claimant did not know her assailant, and he was a stranger to her and to her employer.[4]

Employer denied claimant's workers' compensation claim, and an administrative law judge upheld that denial. On review, the Board reversed. Applying the "parking lot" exception to the "going and coming" rule, the Board concluded that claimant's injury was sufficiently work-related to be "in the course of" her employment and that her injury "arose out of" her employment, because a causal link existed between claimant's injury and a risk associated with her employment.[5] As noted, the Court of Appeals affirmed without opinion. We allowed employer's petition for review.

Employer contends that the Court of Appeals erred in affirming the Board's order on judicial review. Employer first argues that, because claimant did not go to her car immediately after work, as a matter of law she was not injured while "in the course of" her employment. Employer maintains that any hesitation in leaving an employer's premises or any deviation from proceeding immediately to one's car in an employer's parking lot removes a worker from the "in the course of" employment. Employer next argues that, because there is no evidence that the place where claimant's car was parked caused her to be exposed to risks or hazards greater than those to which employer's customers were exposed, there is no substantial evidence in the record to support a finding that claimant's injury "arose out of" her employment.

■■ In interpreting a statute, this court's task is to discern the intent of the legislature. ORS 174.020; *see PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (explaining method of statutory analysis). In

---

[4] The issue whether claimant's injury is compensable under the Act is a different question from the issue whether employer was negligent in failing to provide adequate security for its employees. We do not address any negligence issue in this opinion.

[5] One Board member dissented, concluding that claimant's grocery shopping errand after work amounted to a personal mission that removed her from the "course of" her employment and that, because the assault did not arise from any risk associated with claimant's employment, her injury did not arise "out of" her employment.

attempting to discern the intent of the legislature, the first level of analysis is to examine the text and context of the statute. Text and context includes prior case law from this court interpreting the same statute. *See State v. King*, 316 Or 437, 445-46, 852 P2d 190 (1993) (when this court interprets a statute, that interpretation becomes part of the statute as if written into it at the time of its enactment). If the legislature's intent is clear from those inquiries, further inquiry is unnecessary. *PGE*, 317 Or at 611.

■■    For an injury to be compensable under the workers' compensation law, it must "aris[e] out of" and occur "in the course of employment." ORS 656.005(7)(a). The "arise out of" prong of the compensability test requires that a causal link exist between the worker's injury and his or her employment. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 525-26, 919 P2d 465 (1996);[6] *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994).[7] The requirement that the injury occur "in the course of" the employment concerns the time, place, and circumstances of the injury. *Krushwitz*, 323 Or at 526; *Norpac*, 318 Or at 366.

■■    This court views the two prongs as two parts of a single "work-connection" inquiry, that is, whether the relationship between the injury and the employment is sufficient that the injury should be compensable. *Krushwitz,* 323 Or at 526; *Norpac*, 318 Or at 366. *See* ORS 656.012(1)(c) (Legislative Assembly finds that "those injuries that bear a sufficient relationship to employment * * * merit incorporation of their costs into the stream of commerce."). Both prongs of the work-connection test must be satisfied to some degree; neither is dispositive. *Krushwitz*, 323 Or at 531; *Norpac*, 318 Or at 366. The work-connection test may be satisfied if the factors supporting one prong of the statutory test are minimal while the factors supporting the other prong are many.

---

[6] In *Krushwitz*, 323 Or at 530, this court concluded that, although the "arising out of" prong of the compensability test was met, the "in the course of" prong was not. Therefore, the deceased worker did not suffer a compensable injury. ORS 656.005(7)(a).

[7] In *Norpac*, 318 Or at 369, this court concluded that, although the claimant's injury in the employer's parking lot occurred "in the course of" his employment, the Board had failed to examine the causal connection between the claimant's employment and his injury to determine whether he had shown a sufficient work-connection to justify compensability. The case was remanded to the Board for further consideration.

*Krushwitz*, 323 Or at 531 (citing *Phil A. Livesley Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983)).[8] Both prongs serve as analytical tools for determining whether, in the light of the policy for which that determination is to be made, the causal connection between the injury and the employment is sufficient to warrant compensation. *Andrews v. Tektronix, Inc.*, 323 Or 154, 161-62, 915 P2d 972 (1996).[9]

■     Ordinarily, an injury sustained while a worker is going to or coming from work is not considered to have occurred "in the course of" employment and, therefore, is not compensable. *Krushwitz*, 323 Or at 526 (citing *Cope v. West American Ins. Co.*, 309 Or 232, 237, 785 P2d 1050 (1990)); *Norpac*, 318 Or at 366. That general rule is called the "going and coming" rule. The reason for the "going and coming" rule is that the relationship of employer and worker ordinarily is suspended from the time the worker leaves work to go home until he or she resumes work because, while going to or coming from work, the worker is rendering no service for the employer. *Krushwitz*, 323 Or at 526-27 (citing *Heide / Parker v. T.C.I. Incorporated*, 264 Or 535, 540, 506 P2d 486 (1973)).

■     However, there are some exceptions to the "going and coming" rule. One is the "parking lot" exception. Under that exception, injuries sustained on the employer's premises

---

[8] Professor Larson states that, generally, the observation that each test must be independently applied and met does no harm. He cautions, however, that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term "work-connection." He warns that "an uncompromising insistence on independent application of the two portions of the test can, in certain cases, exclude clearly work-connected injuries." 1 *Larson's Workers' Compensation Law* § 6.10 at 3-3 (rebound ed 1997).

[9] In *Rogers v. SAIF*, 289 Or 633, 642-43, 616 P2d 485 (1980), this court concurred with the following statement found in *Allen v. SAIF*, 29 Or App 631, 633-34, 564 P2d 1086 (1977):

"The statutory phrase 'arising out of and in the course of employment' must be applied in each case so as to best effectuate the socio-economic purpose of the Workers' Compensation Act: the financial protection of the worker and his/her family from poverty due to injury incurred in production, regardless of fault, as an inherent cost of the product to the consumer. Various concepts have arisen from attempts to rationalize that purpose, *e.g.*, the going and coming rule, special errands, lunch hour cases, dual purpose trips, impedimenta of employment, horseplay, *etc.* Each is helpful for conceptualization and indexing, but there is no formula for decision. Rather, in each case, every pertinent factor must be considered as a part of the whole. It is the basic purpose of the Act which gives weight to particular facts and direction to the analysis of whether an injury arises out of and in the course of employment." (Citations omitted.)

while the worker is going to or coming from work have a sufficient work-connection to be considered to have occurred "in the course of" employment. *Norpac*, 318 Or at 366-67 (citing *Cope*, 309 Or at 238).[10]

The mere fact that a worker is injured in the employer's parking lot does not, in and of itself, establish a compensable injury. *Norpac*, 318 Or at 367-69 (rejecting view that injury in employer's parking lot is *per se* compensable). In addition to establishing that an injury occurred in the course of employment, a claimant also must establish a causal connection between the injury and the employment—that is, that the injury arose "out of" the claimant's employment. *Krushwitz*, 323 Or at 531; *Norpac*, 318 Or at 368-69.

We first address the issue whether claimant's injury occurred "in the course of" her employment. That inquiry tests the time, place, and circumstance of the injury. During oral argument in this court, employer's counsel conceded that, if claimant had gone to her car immediately after work, she would have been "in the course of" her employment at the time that she was injured. Employer argues, however, that claimant was not coming from work at the time she was injured; rather, employer asserts, she was coming from a personal shopping errand and, thus, her work-connection had been terminated.

An injury occurs "in the course of" employment if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it. "In the course of" employment also includes a reasonable period of time after work for the worker to leave the employer's premises, including the employer's parking lot. By "reasonably incidental to" employment, we include activities that are personal in nature—such as a telephone call home or a brief

---

[10] The "parking lot" exception is a recognition that the parking lot over which an employer exercises control is a part of the worker's employment environment. *See Cope v. West American Ins. Co.*, 309 Or 232, 238, 785 P2d 1050 (1990) ("Employer control over the premises is the rationale supporting the parking-lot exception."). *See also* Alan Stephens, *Workers' Compensation: Coverage of Injury Occurring in Parking Lot Provided by Employer, While Employee Was Going To or Coming From Work*, 4 ALR5th 443 (1992 and Supp).

visit with a coworker—as long as the conduct bears some reasonable relationship to the employment and is expressly or impliedly allowed by the employer. *See generally* 2 *Larson's Workers' Compensation Law* §§ 21.60 to 21.64 (rebound ed 1997) (discussing cases involving preparatory or incidental acts before and after work). *Cf. Clark v. U.S. Plywood*, 288 Or 255, 266, 605 P2d 265 (1980) (compensability of on-premises injuries sustained while engaged in activities for the personal comfort of the employee can best be determined by a test that asks: Was the conduct expressly or impliedly allowed by the employer?).

Professor Larson summarizes the foregoing principle as follows:

"The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts. The rule is not confined to activities that are necessary; it is sufficient if they can be said to be reasonably incidental to the work. What constitutes a reasonable interval depends not only on the length of time involved but also on the circumstances occasioning the interval and the nature of the employee's activity." 2 *Larson's Workers' Compensation Law* § 21.60(a) at 5-45 to 5-46 (footnotes omitted).

In this case, the Board found that claimant's "brief grocery shopping after work" was insufficient to sever the connection with her employment. The Board concluded that claimant was in the "course of her employment" when she was injured on the parking lot.[11] We agree.

---

[11] Other courts have held that an injury is compensable for workers' compensation purposes when it occurs during a brief personal deviation in the employer's store after work. *See, e.g., Briley v. Farm Fresh, Inc.*, 240 Va 194, 396 SE2d 835 (1990) (workers' compensation exclusive remedy for worker who slipped on floor while shopping 15 minutes after the end of her shift); *Carter v. Lanzetta*, 249 La 1098, 193 So2d 259 (1966) (workers' compensation benefits ordered for worker who fell while leaving employer's premises after lingering at store 20-30 minutes talking to employer); *Carter v. Winn Dixie Louisiana, Inc.*, 517 So2d 504 (La App 1987) *writ den* 520 So2d 755 (1988) (workers' compensation was exclusive remedy for worker who slipped on floor while shopping several minutes after work); *but see Fowler v. Texas Employers' Ins. Ass'n*, 237 SW2d 373 (Tex Civ App 1951) (worker who remained on employer's premises 15 to 20 minutes to shop was not entitled to workers' compensation).

Employer argues that this court has construed the "place" component of the "in the course of" prong of the work-connection test strictly, citing *Cope*, 309 Or at 239-40 (worker who was injured on a public sidewalk over which employer has no control, and on which there were no employer-created hazards, would be denied compensation). From that premise, employer urges this court to construe the "time" and "circumstances" components of the "in the course of" prong of the test with the same degree of strictness. Employer cites no authority for such construction of the time and circumstances components and we know of none. We reject such a rigid application as contrary to the well-reasoned principle, expressed by Professor Larson and by courts in other jurisdictions, that "in the course of" employment includes a reasonable period of time after work to leave the employer's premises, including the employer's parking lot.

Employer also contends that the Board engaged in a "distinct departure" analysis in this case and, thereby, reached an erroneous conclusion regarding the "in the course of" prong of the compensability test. Employer argues that a "distinct departure" analysis traditionally has been limited to compensability determinations in "traveling employee" cases.[12]

This court has no occasion to address whether a "distinct departure" analysis would be appropriate on these facts. Contrary to employer's reading of the Board's opinion, the Board does not appear to have engaged in a "distinct departure" analysis. We read the Board's opinion to rest on its conclusion that claimant's shopping did not take her outside the "course of" her employment.[13] The Board did not mention the

---

[12] 2 *Larson's Workers' Compensation Law* § 25.00 at 5-275, states:

"Employees whose work entails travel away from the employer's premises are held in the majority of jurisdictions to be within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown."

[13] The Board's opinion states, in part:

"In this case, instead of leaving work immediately, claimant grocery shopped briefly before leaving the employer's store and going out to the parking lot to go home. We do not find that claimant's brief grocery shopping after work was sufficient to sever the connection with claimant's employment. * * * [W]e conclude that claimant was in the 'course of her employment' when she was injured on the parking lot[.]"

"distinct departure" test and cited no cases applying a "distinct departure" analysis.

We conclude that the Board applied the correct principles of law when it found that claimant's brief grocery shopping after work was insufficient to sever the connection with her employment. Moreover, we agree with the Board that claimant was "in the course of" her employment when she was injured in employer's parking lot.

We next address the issue whether claimant's injury "arose out of" her employment. That inquiry tests the causal connection between claimant's injury and a risk connected with her employment. *Krushwitz*, 323 Or at 525-26; *Norpac*, 318 Or at 366.

■ Employer's premise, that claimant's injury did not arise "out of" her work, because the place where her car was parked caused her to be exposed to no greater risk or hazard than those to which employer's customers were exposed, is unwarranted and we reject it. In *Livesley*, 296 Or at 31, this court specifically rejected "the largely obsolete 'peculiar-risk' and 'increased-risk' considerations" in assessing whether a worker's injury was linked to a risk connected with employment. Rather, a worker's injury is deemed to "arise out of" employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker.

■ The Board found a sufficient relationship between claimant's injury and a risk of her employment to conclude that her injury "arose out of" her employment:

> "Claimant was required by the employer to park in an area on the perimeter of the parking lot. The closest lights were halfway between the area where claimant parked and the store. Claimant indicated that the area where her car was parked and where the attack took place was not well lit. In addition, witnesses testified that 'transients' were sometimes a problem on the employer's parking lot and premises."

The Board further found that claimant's employment exposed her to a risk of assault, because her employer required her to park at the "fringes" of the parking lot in an

area that was not well lit and that "[those] factors made claimant vulnerable to an attack" and created the risk that such an attack would occur. The Board concluded that claimant's injury arose out of a risk to which her employment exposed her. We agree with the Board that claimant's injury "arose out of" her employment.[14]

Both prongs of the compensability test having been established, we conclude that the relationship between claimant's injury and her employment is sufficient and that her injury is compensable. Accordingly, we affirm the decision of the Court of Appeals and the order of the Board.

The decision of the Court of Appeals and the order of the Workers' Compensation Board are affirmed.

**GILLETTE, J.,** concurring.

I agree with the majority that there was a sufficient connection between claimant's work and the circumstances of her injury to require an award of workers' compensation benefits. I agree with the dissent that this is a very close case. I write this brief separate opinion to speak only to a concern that arises out of this court's involvement in cases like the present one.

Regrettably, it turns out that this case was not review-worthy. As we finally decide it by a divided court, we turn out to be disagreeing only over the sufficiency of the agreed facts to meet a legal test which is not new and on

---

[14] The dissent cites several cases in which courts have held that assaults were not sufficiently work-related, because the employer did nothing to create the risk of an assault occurring. Other courts, however, have allowed workers' compensation benefits on similar facts. *See, e.g., Roberson v. Whetsell*, 21 Va App 268, 463 SE2d 681 (1995) (award upheld where, as a condition of employment, claimant was required to make regular trips through dangerous neighborhood that increased risk of exposure to criminal activity); *S.E. Rykoff & Co. v. Industrial Comm'n*, 172 Ariz 22, 833 P2d 39 (1992) (claimant injured attempting to stop a thief who had broken into his truck which had been parked at night in an unsafe area); *Bear v. Honey well, Inc.*, 468 NW2d 546 (Minn 1991) (assault by unknown person was assumed to have been caused by worker's late night presence in employer's parking garage and, thus, was incident to her employment); *Jenkins v. Wilson*, 397 So 2d 773 (Fla App 1981) (claimant assaulted in parking lot while leaving work later than usual). Moreover, Professor Larson's treatise cites several cases in which courts have allowed compensation where, arguably, the case was weak on both prongs of the compensability test. 2 *Larson's Worker's Compensation Law* § 29.10 at 5-476 *et seq.*

which all agree. That is not an appropriate expenditure of this court's judicial time.

This case was affirmed without opinion by a panel of the Court of Appeals. *Fred Meyer, Inc. v. Hayes*, 141 Or App 439, 917 P2d 1077 (1996). In that posture, the case had no precedential significance or, indeed, any other kind of significance to anyone other than the parties. A review of the extensive (but nonexclusive) list of criteria for granting discretionary review found at Oregon Rule of Appellate Procedure 9.07 fails to produce a single substantive example from that list that the present case fairly can be said to meet. With respect, I submit that we erred in allowing review.

The foregoing error would be of no moment, were it not for the collateral consequences that seem to flow from decisions like the one that we announce today: A number of parties, disappointed with the outcome of their intensely fact-bound disputes in the Court of Appeals, will feel that it is worthwhile to take a flyer on petitioning for review to this court. "After all," they fairly may say, "the court took review in the *Hayes* case."

I wish we hadn't.

**GRABER, J.,** dissenting.

I respectfully dissent. Although this is a close case, in my view claimant did not establish that her injury was compensable.

"The burden of proving that an injury * * * is compensable * * * is upon the worker. The worker cannot carry the burden of proving that an injury * * * is compensable merely by disproving other possible explanations of how the injury * * * occurred." ORS 656.266.

On review, the facts are not contested. The Board accepted the parties' stipulated facts, adopted the "notice[d] facts" found by the administrative law judge, and made its own findings.

The parties stipulated to these facts:

"[C]laimant was assaulted within a half hour of finishing her work shift on a parking lot owned and controlled by the

employer. The assault caused injuries which required medical treatment and resulted in disability. At the time she was assaulted, claimant's vehicle was parked in an area of the lot where the employer had specified that employees could park."

Among the "notice[d] facts" that the Board adopted were that:

• the distance from the south side of the employer's building to the sidewalk is about 225 feet;

• light was provided to the parking lot by a publicly owned light at an intersection adjacent to the employer's premises, by five light fixtures in the parking lot, and by three larger light fixtures at a parking lot across the street from the area where claimant's car was parked;

• employer's light fixtures are located about 80 feet south of employer's building, in between parking spaces; and

• the nearest vehicular entrances and exits are about 160 feet to the west and 200 feet to the north of where claimant's car was parked at the time of the assault.

The Board made these additional findings, among others:

"On March 20, 1994, claimant finished her shift working in the employer's apparel department at 8:00 PM. She did some personal grocery shopping in the employer's grocery department which took about 15 to 20 minutes. After completing her shopping, claimant left the store through the grocery exit and walked toward her car pushing a cart containing groceries. The parking lot was approximately half full of cars when claimant left the store. Claimant's car was parked approximately 72 yards from the grocery exit.

"On the night of her injury, the upper parking lot was full and claimant parked in an area around the perimeter of the main lot in a space which the employer had designated for employees to park. The area where claimant parked on March 20, 1994 was not well lit. The closest lights were half way across the parking lot.

"As claimant approached her car, she was attacked by a man with a knife who apparently attempted to force her into his vehicle. The man had apparently driven his vehicle

onto the employer's lot. \* \* \* Claimant did not know her attacker and the attacker was not known to have any connection with the employer or with claimant.

"\* \* \* \* \*

"The employer required employees to park on the upper parking lot of the store where claimant worked, or if that lot was full, in areas specified by the employer around the perimeter of the main parking lot. Employees could be disciplined if they parked in areas other than those specified by the employer. On the night claimant was assaulted, there was no security guard in the parking lot. Transients occasionally came onto the employer's premises including the parking lot area. If transients or other individuals bothered employees or customers, the employer took steps to ask them to leave or called the police. The employer has a policy to escort employees who wished such an escort out to their cars."

For an injury to be compensable under the Workers' Compensation Law, it must "aris[e] out of" and occur "in the course of" employment. ORS 656.005(7)(a). To determine compensability, the court assesses the sufficiency of the relationship between the injury and the employment.[1] That unitary approach has two parts: the "in the course of" prong (time, place, and circumstances of the injury) and the "arising out of" prong (causal connection between the injury and the employment). *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). Both prongs of the compensability test must be satisfied to some degree. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 531, 919 P2d 465 (1996).

In *Norpac Foods*, the court relied on *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29, 672 P2d 337 (1983), for the proposition that being injured on the employer's premises during work hours is not necessarily a sufficient work connection. 318 Or at 368-69. Rather, the court must "determine whether the injury had its origin in a risk connected with the employment or rationally and naturally incidental thereto." *Livesley*, 296 Or at 32. In *Livesley*, the court quoted with approval

[1] *See* ORS 656.012(1) (Legislative Assembly finds that "those injuries that bear a sufficient relationship to employment \* \* \* merit incorporation of their costs into the stream of commerce.").

from Professor Larson's explanation of the two-pronged, but unitary work-connection approach:

> " 'One is almost tempted to formulate a sort of quantum theory of work-connection that a certain minimum quantum of work-connection must be shown, and if the "course" quantity is very small, but the "arising" quantity is large, the quantum will add up to the necessary minimum, as it will also when the "arising" quantity is very small but the "course" quantity is relatively large. But if both the "course" and "arising" quantities are small, the minimum quantum will not be met.' 1A Larson, Workmen's Compensation Law § 29.10 at 5-355." 296 Or at 28 (footnote omitted).

I turn first to the "course" prong of the test. In this case, claimant was injured after leaving work. Ordinarily, an employee who is going to or coming from work is not "in the course of" employment. *Norpac Foods*, 318 Or at 366. "The reason for the going and coming rule is that '[t]he relationship of employer and employee is ordinarily suspended from the time the employee leaves his work to go home until he resumes his work, since the employee, during the time that he is going to or coming from work, is rendering no service for the employer.' *Heide/Parker v. T.C.I. Incorporated*, 264 Or 535, 540, 506 P2d 486 (1973) (internal quotation marks omitted)." *Krushwitz*, 323 Or at 526-27. An exception to that general rule is recognized for employer-controlled parking lots. *Norpac*, 318 Or at 366-67. But, because the employee who comes within the parking-lot exception no longer is actually working (as recognized by the general rule against compensating injuries sustained while going to or coming from work), "the 'course' quantity is very small." *See Livesley*, 296 Or at 28 (quoting Larson).

The "course" quantity is made even smaller in this particular case by the fact that, after her work shift ended, claimant spent more than a quarter of an hour engaged in the personal activity of grocery shopping, before going to the parking lot. Both the length of time and the nature of the activity are such as to be toward the outer edge of the course of employment. *See* 2 *Larson's Workers' Compensation Law* § 21.60 at 5-45 to 5-56 (rebound ed 1997) (collecting cases on "personal comfort doctrine"; "The course of employment, for employees having a fixed time and place of work, embraces a

reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts."). In all the circumstances of this case, the "course" quantity is so slight that the "arising" quantity must be weighty for claimant's injury to be compensable under the principles embraced in *Livesley*.

However, the "arising" quantity is not weighty. The court in *Livesley* noted that an attack on the job by an unknown person, whose motive may have been personal *or* related to the employment, is a "neutral" risk rather than a risk distinctly associated with the employment. 296 Or at 30 n 6.

The factors associated with claimant's employment on which the Board relied are: claimant's shift ended at 8:00 p.m. when it was dark outside; employer required claimant to park in an area on the perimeter of the parking lot if she drove a car to work and chose not to park on a public street; that area was not well lit, in that the closest lights were half way across the parking lot; and there had been an earlier problem with "transients" in the parking lot.

Taking the last factor first, "transients" are not criminals. There is no finding and no evidence that a "transient" (or, indeed, anyone else) ever had attacked anyone in employer's parking lot. There is no finding and no evidence that claimant's attacker, who arrived by car, was a "transient." There is no finding and no evidence that the earlier presence of "transients" in the parking lot created a risk of assault. Indeed, as the Board found, "the attacker was not known to have any connection with the employer."[2]

That leaves time, location and lighting. The Board found that the assault occurred at about 8:30 p.m. and that it was dark outside. The Board further found that claimant's car was parked about 216 feet (72 yards) from the building, that the lot is adjacent to a public street, that the light fixtures were located about 80 feet from the building, and that the overall width of the parking lot was 225 feet. Accordingly, the Board's finding that the nearest light was "half way

---

[2] The majority appropriately does not rely on this factor.

across the parking lot" translates into a finding that the nearest light was about 136 feet (216 feet minus 80 feet) from claimant's car. Her car was about 160 feet from the nearest vehicular entrance through which the attacker could have driven.

In order for claimant's injuries to be compensable, one must conclude that a requirement to work until 8:00 p.m. and to park near a public street at a point 216 feet from the employer's building and 136 feet from the nearest lamp-post—without more—creates a risk of assault. As noted above, there is no finding and no evidence of prior assaults at that time or in that location. There also is no finding and no evidence that the neighboring street near which claimant parked was dangerous or that the area was deserted. In fact, although the Board did not make a finding one way or another with respect to the point, the undisputed evidence was that there were customers in the parking lot at the time of the attack. In other words, there is no evidence that the time, location and lighting (employment conditions) created a risk of assault. There is only the *post hoc* determination that this assault happened to occur under those conditions. *Post hoc* is not *propter hoc*, and fear is not causation.

As noted, under ORS 656.266, claimant bears the burden to prove compensability. Moreover, that statute specifies that a claimant cannot carry the burden of proving compensability "merely by disproving other possible explanations of how the injury * * * occurred." In general, a claimant can carry the burden to prove that injuries sustained in an assault arise out of employment in one of three ways.

In general, an assault arises out of employment if the *nature of the work* or the *setting of the work* creates a risk of assault, or if the *reason for the assault* was a quarrel having its origin in the work. *See* 1 *Larson's* § 11.00 at 3-22 (discussing concept). Here, the only possible basis, and the basis on which the majority relies, is that the time and the setting where employer required claimant to park (if she chose to drive to work and not to park on the public street) created a risk of assault. *See id.* at § 11.11(b) (assault may arise out of employment when employment required employee to work in or travel through a dangerous locality, or when employee is

required to work late at night or in an isolated area). As explained above, claimant's evidence on this point is weak.

I am aware of no decided case that authorizes workers' compensation when the "arising" prong *and* the "course" prong are as tenuous as they are in this case. Even when the "course" prong is stronger than it is in this case, courts often have denied compensation to victims of unknown assailants when the "arising" prong is comparable to what exists here. For example, in *Hill City Trucking, Inc. v. Christian*, 238 Va 735, 385 SE2d 377 (1989), the Supreme Court of Virginia denied compensation to a truck driver who was assaulted on the road by robbers. The claimant did not show that he was targeted for assault as a truck driver, and anyone traveling at 3:00 a.m. was subject to the same risk. 385 SE2d at 380. The claimant thus failed to supply a causal link between the risk and the employment and, accordingly, failed to show that his injuries arose out of his employment. *Ibid.*

Similarly, the court in *Walk v. S.C. Orbach Co.*, 393 P2d 847 (Okla 1964), held that the claimant's injuries from an assault in the employer's parking lot were not compensable, because they did not "arise out of" employment. There, the "course" prong was stronger than in this case, because the claimant left for the parking lot immediately after checking out from her work shift, which ended at 6:00 p.m. The court held that the injuries did not arise out of employment, however, because there was no evidence to show that the claimant's work environment created a risk of assault. The connections on which the claimant relied were that she was required to park in a specified part of the parking lot, where the assault took place, and that her regular work shifts required her to frequent that area at the time the assault took place. *Id.* at 851. There was no showing, however, that assault was common at that location or time. *Ibid.* For an injury to be compensable, "there must exist some causal connection between the injury and the employment," such as the conditions under which the work is required to be performed. *Id.* at 849-50 (citing *Indian Territory Illumination Oil Co. v. Lewis*, 165 Okla 26, 24 P2d 647 (1933).

In *Gibberd by Gibberd v. Control Data Corp.*, 424 NW2d 776 (Minn 1988), the claimant was working late and

was shot and killed by an unknown assailant while returning to work from a meal break at a nearby restaurant. The court held that the claimant's death was not compensable, because the claimant was away from the premises on a meal break (making the "course" prong weak) and because there was no evidence to suggest that the assault bore any connection to employment (making the "arising" prong weak). *Id.* at 781-84.

In *Williams v. Salem Yarns*, 23 NC App 346, 208 SE2d 855 (1974), the court denied compensation to an employee who was shot by a nearby resident while walking toward the mill's parking lot. The employee had left the mill after completing his shift, making the "course" prong stronger than in the present case. The court held that the "arising" prong was insufficient, because the assault had an insufficient connection with employment to make it logical to conclude that employment created the risk of the attack. 208 SE2d at 856. The court found, for example, that there was no evidence that the assailant held an animus toward all employees at the mill. *Ibid.*

In *Foster v. Johnson*, 264 Ark 894, 576 SW2d 187 (1979), the Supreme Court denied compensation to a claimant who was the victim of an unexplained shooting. The shooting took place on the employer's parking lot after the employee had left work. 576 SW2d at 188. Although the "course" prong was stronger than is true here, the "arising" prong was not met, because there was no evidence that the assault bore any connection to employment. *Id.* at 189. *See also* 1 *Larson's* § 11.33 n 5 (collecting cases in which courts have denied compensation for unexplained assaults by nonemployees).

To summarize, claimant failed to establish that her injuries are compensable, because the quantities of both the "course" and "arising" prongs of the work connection test are small. I dissent from the majority's contrary holding.

Carson, C. J., joins in this dissenting opinion.