Argued and submitted September 1, 2000, reversed and remanded March 27, 2002

In the Matter of the Compensation of
Randall D. Leopard, Claimant.

HALSEY SHEDD RFPD,
*Petitioner,*

*v.*

Randall D. LEOPARD,
*Respondent.*

99-01491; A108543

44 P3d 610

Xan Eriksson argued the cause for petitioner. On the brief were David L. Johnstone and VavRosky, MacColl, Olson & Pfeifer, P.C.

Edward J. Harri argued the cause for respondent. With him on the brief was John C. DeWenter.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LINDER, J.

## LINDER, J.

Employer seeks review of a Workers' Compensation Board (board) order awarding compensation to claimant for an injury he suffered while on stand-by duty as a volunteer firefighter. The sole issue presented is whether the board correctly determined that claimant's injury, which he sustained when he fell in his driveway while walking toward an employer-provided vehicle, arose out of and in the course of employment. ORS 656.005(7)(a). We reverse and remand.

We quote the undisputed facts as found by the ALJ and adopted by the board:

"Claimant began working for the Halsey Shedd Rural Fire District in 1995 as a volunteer firefighter. The District consists of three fire stations in three different towns. Claimant was promoted until he reached his current rank of second assistant fire chief in the fall of 1997. Claimant's duties in that position require him to be in command when the first assistant and the fire chief are not available. Every third weekend claimant assumes the duty as lead person in charge of responding to emergencies. On such weekends claimant's shift begins at 6 p.m. Friday and ends the following Monday at 6 a.m. Claimant's duties include making sure there is proper staffing and touring the three fire stations. Claimant is present during investigations and must respond to every emergency which occurs on those weekends.

"On the weekends that claimant is in charge, he typically wears a fire department logo shirt and carries his firefighting gear in his vehicle. Claimant has two different pagers, provided by the employer, in order to receive emergency calls. During the weekends when claimant is on duty and in charge, he drives a fire district truck. Claimant had a verbal agreement with the employer that, while he was on duty, he would use the fire district truck in place of his own vehicle in case he had to respond to emergencies. The purpose of the agreement was to ensure that claimant responded as quickly as possible to emergencies. Claimant did not use the district's truck to transport family members or friends. When the truck is not used by claimant, it is kept at the fire station. As second assistant fire chief, claimant is paid $600 per year.

"On Sunday, January 17, 1999, claimant was on duty and in charge as lead person. That morning, he was leaving his home to go to church with his family. Claimant's wife and son had already started to walk to the church, which was two blocks away from his home. Claimant was assisting a friend who was also leaving his home with her small child. Claimant was holding the child for its mother while she ran back to retrieve something from claimant's home. Claimant began to walk toward the fire district truck while carrying the child when his pager went off. Claimant reached down and took his pager out when his foot slipped on some dirt and gravel in his driveway and he fell to the ground injuring his lower right leg and ankle.

"Claimant received emergency care from members of the fire district who responded to [his subsequent] call. He was then taken to the hospital by ambulance where he was diagnosed with a fracture of the distal fibula. Claimant missed five weeks of work at his full-time employment. He also missed work at the fire district due to the injury and has not been released to regular duty work.

"On weekends that claimant was not on duty, he typically walked to church with his family. The walk to church takes approximately two to three minutes. If claimant had not been walking toward the fire duty truck at the time of injury, he would have taken another path to [church]. Claimant was walking toward the truck to unlock it at the time he was injured. Claimant was not going to transport his friend and her child to church that day in the fire district truck.

"Based on demeanor, claimant is a credible witness."

(Footnote omitted.)

The record contains added detail about claimant's fall, not described in the order below, but which was provided through claimant's testimony and was undisputed. In particular, claimant explained that he was walking across his dirt and gravel driveway, he turned right to go towards the fire district vehicle, took a step onto his left foot, and then stepped back on his right foot, at which point his foot slid inward, his ankle rolled, and he fell. When asked what "caused" the fall, claimant said only that he had "slipped" and he specifically said that the pager did not have anything to do with causing him to slip.

Claimant sought compensation for his injury, employer denied the claim, and claimant requested a hearing. Following the hearing, the ALJ concluded that, although claimant was at his home preparing to leave for church at the time of his injury, the connection between his injury and his employment was sufficient to warrant compensation. Consequently, the ALJ set aside employer's denial. The board adopted the ALJ's order in full, and affirmed.[1] On review, as before the board, the parties debate whether claimant's injury is sufficiently connected to his work as a volunteer firefighter to be compensable. We review the board's factual findings for substantial evidence and its legal conclusions for errors of law. ORS 183.482(8).

■■■■ The legal standards that direct our inquiry have been the source of frequent litigation and are, for present purposes, well-settled. Only those injures that "aris[e] out of" and occur "in the course of employment" are compensable under the workers' compensation laws. ORS 656.005(7)(a). The court views the two prongs of that compensability test as two parts of a unitary "work-connection" inquiry that asks whether the relationship between the injury and the employment is sufficiently close that the injury should be compensable. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997); *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996). Each prong serves to test a different aspect of the possible work connection. The requirement that the injury occur "in the course of" the employment relates to the time, place, and circumstances of the injury. *Krushwitz*, 323 Or at 526. The "arise out of" prong tests the causal relationship between the worker's injury and his or her employment. *Fred Meyer, Inc.*, 325 Or at 596; *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994). The work-connection test may be satisfied if the factors supporting one prong of the statutory test are weak while the factors supporting the other prong are strong. *Redman Industries, Inc. v. Lang*, 326 Or 32, 35, 943 P2d 208 (1997). Both prongs, however, must be satisfied to some degree. *Fred Meyer, Inc.*, 325 Or at 596; *Krushwitz*, 393 Or at 531.

---

[1] Because the board adopted and affirmed the Opinion and Order of the ALJ without opinion, we refer to the ALJ's opinion as that of the board.

In concluding that the work-connection test was satisfied here, the board did not separately analyze the two prongs of the test. Instead, after articulating the correct legal standards, the board relied on four factual circumstances to support its conclusion that the work connection was sufficient. Specifically, the board reasoned that, when claimant fell: (1) claimant was on paid duty; (2) he was walking to a fire district vehicle that his employer required him to use; (3) he had received a page on the employer-provided pager, which he was required to wear while on duty; and (4) to walk to the fire district vehicle, claimant altered the route that he would have otherwise taken to go to church.

The factors identified by the board all relate to the time, place, and circumstances of the injury; they thus bear on whether the injury arose "in the course" of claimant's employment. In *Fred Meyer, Inc.*, the Supreme Court observed that an injury occurs in the course of employment if

> "it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of employment or is doing something reasonably incidental to it."

325 Or at 598. Here, we agree that at least some of the factors identified by the board support a conclusion that claimant's injury arose "in the course" of his employment.

We previously have observed that "on-call" status, although not sufficient in and of itself to satisfy the "arises out of employment" prong of the test, conceivably can provide a basis to conclude that a worker's injury has occured "in the course of employment." *Allen v. SAIF*, 29 Or App 631, 634-35, 564 P2d 1086 (1977); *see also Walker v. SAIF*, 28 Or App 127, 130, 558 P2d 1270 (1977). We agree that, in this case, claimant's on-duty status does provide a minimal time, place, and circumstance connection to employment, especially in combination with the other factors identified by the board. In particular, in addition to his "on-duty" status, claimant was walking towards the fire district vehicle and was checking his work pager when the injury occurred.[2] At the same time,

---

[2] To be sure, as employer argues, claimant may not have shown that the page on the pager was work related. Claimant, who is permitted to receive personal calls

however, it bears acknowledgment that the time, place, and circumstances also had a significant nonwork component. That is, claimant was primarily engaged in the personal activity of going to church, and many of the circumstantial facts involved (*e.g.*, the decision whether and when to go to church, carrying the child as he did so, the composition of his driveway, etc.) were not employment related at all. This therefore is not a case in which "[b]ut for employer's directive," *Robinson v. Nabisco, Inc.*, 331 Or 178, 189, 11 P3d 1286 (2000), claimant would not have been where he was, doing what he was doing. Rather, claimant was engaged in the personal activity of going to church and was walking to the fire district vehicle only as an incident to that personal activity. In other words, "but for" his decision to pursue that nonwork activity, he would not have had to go to the fire district vehicle at all when he did. His activity at the time therefore is most accurately characterized as significantly personal in nature, with an incidental connection to work. Thus, although we agree that there is some circumstantial connection to work—enough to characterize the injury as occurring "in the course" of employment—the connection is not a strong one.

■     We also must examine the second prong of the work-connection test—*i.e.*, whether the injury "arises out of" the employment. As earlier noted, that inquiry examines whether a "causal link exists between claimant's injury and a risk connected with employment[.]" *Robinson*, 331 Or at 188. To satisfy the arises-out-of-employment prong of the analysis, the "causal connection must be linked to a risk connected with the nature of the work or a risk to which the work environment expose[s] [the] claimant." *Redman Industries, Inc.*, 326 Or at 36.

None of the factual circumstances identified by the board relate to causation generally, or to the more specific

on his work-provided pager, did not read the number on the pager before he fell. When he later checked it, the number had been erased from memory. Fire department records showed that no emergency calls came into the fire department on the weekend in question, other than the call related to claimant's injury. But we agree that the board was entitled to treat the act of answering the pager as establishing some connection to work, because answering the pager, whether it was work related or not, was among claimant's work responsibilities.

requirement that the injury be due to a risk arising from the nature of the work or the work environment. Rather, on this record, they can be characterized as describing only the circumstances of the injury. Here, claimant specifically acknowledged that his act of reaching for his pager had nothing do to with his fall. Nor did the route that claimant took to the fire district vehicle entail a distinctively different risk of injury than the route that claimant would have taken had he walked to church. To the contrary, the record shows that the route that claimant would have followed had he walked to church also would have entailed crossing claimant's dirt and gravel driveway. Finally, the fact that claimant was "on duty" was not, standing alone, a basis to conclude that the injury was caused by his employment. Claimant's on-duty status, in and of itself, was indistinguishable in practical terms from being on call, which we have held does not render an off-premises injury compensable unless the employee was called to duty or the employee's activities were significantly restricted by the employer. *See Walker*, 28 Or App at 130; *see also Allen*, 29 Or App at 634-35 (death caused by an auto accident did not arise out of employment of uniformed security guard who was on call during lunch errand, who carried walkie-talkie to respond to emergencies, and who was driving employer-provided vehicle).

Thus, the activities that provide a minimal circumstantial connection between claimant's injury and his work—*i.e.*, altering his course slightly to walk to the fire truck and answering the page—do not also provide the requisite *causal* connection between the two. The risk that claimant's foot would slip on the dirt and gravel in his own driveway was not a risk "distinctly associated" with being a firefighter. *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29-30, 672 P2d 337 (1983) (quoting treatise). Said another way, it was not a risk that was inherent in the "nature" of claimant's work as a firefighter. It was, rather, a risk that existed whenever claimant walked from his house across his driveway, for whatever reason he might choose to do so. The connection between that risk and claimant's work activities is coincidental, not causal.

Nor was the risk one that inhered in claimant's work environment. In that regard, it is significant that this was an off-premises injury and that the premises involved was

claimant's own driveway. Certain obvious risks inhere in particular work environments, such as:

> "machinery breaking, objects falling, explosives exploding, tractors tipping, fingers getting caught in gears, excavations caving in, and so on[.]"

Arthur Larson and Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 4.03, 4-2 (2001). Likewise, the work environment can expose employees to other, less obvious risks of injury, such as the risk of physical altercations with coworkers, the risk of sexual harassment by one's supervisor, and even the risk of an assault by a stranger. *See, e.g., Redman Industries, Inc.*, 326 Or at 40 (work environment exposed the claimant to the risk that a coworker might lose self-control and assault him); *Goodman-Herron v. SAIF Corp.*, 151 Or App 602, 607-08, 950 P2d 932 (1997), *rev den* 327 Or 173 (1998) (sexual harassment is a risk of a claimant's work environment); *see also Fred Meyer, Inc.*, 325 Or at 601-02 (the claimant's work environment—where employer forced her to park in a dimly lit portion of employer's parking lot—exposed her to the risk of assault). Here, however, the particular risk involved was the risk of injury by slipping on the dirt and gravel in claimant's driveway, which was a risk that arose in claimant's home environment and was in claimant's control, not that of his employer.

■    The fact that the injury was not a work-premises injury distinguishes this case from injuries on work premises where the injury arises in the course of work activities and the cause of the injury is a neutral one or is unknown. For example, in *Phil A. Livesley Co.*, the claimant sorted onions at employer's food-processing plant. After working an eight-hour shift, the claimant walked down a crowded aisle from his work station to the plant time-clock and inexplicably fell and broke his hip. The area where the claimant fell was free from debris and other substances that may have explained why he fell. The claimant established, however, that his injury was not idiopathic, *i.e.*, peculiar to him, in nature. In concluding that the facts permitted an inference that the claimant's fall resulted from exposure to his employment environment, the Supreme Court explained that

"a truly unexplained fall that occurs *on the employer's premises, during working hours, while the employe[e] is performing required duties* is compensable if the employee can eliminate idiopathic causes."

296 Or at 30 (emphasis added). Stated another way, a claimant's injury can be inferred to be causally linked to his or her work environment, thus satisfying the second prong of the work-connection test, when the claimant eliminates idiopathic causes and the injury "was traceable to some ordinary risk, albeit unidentified, to which the employment premises exposed the employe[e]." *Id.* at 32 (citing *Larsen v. State Ind. Acc. Com.*, 135 Or 137, 140, 295 P 195 (1931)); *see also Wallace v. Green Thumb, Inc.*, 296 Or 79, 83-84, 672 P2d 344 (1983) (mere fact that employment places employee at site of injury does not give rise to compensable injury; but on-premises injury directly caused by use of an instrumentality connected to the employment was sufficient, even for employee who was only on call and was not actively performing employment duties); *McTaggart v. Time Warner Cable*, 170 Or App 491, 504, 16 P3d 1154 (2000), *rev den* 331 Or 633 (2001) (applying analysis from *Phil A. Livesley Co.* to off-premises area adjacent to workplace over which employer exercised almost exclusive control).

Here, claimant's injury is, at best,[3] traceable in a causal sense to the ordinary risk of slipping and falling on dirt and gravel. But the dirt and gravel was in claimant's own driveway. The risk thus was not one that can be said to have inhered in the work environment. Nor, as earlier discussed, was the risk one distinctively associated with the nature of claimant's work as a volunteer firefighter. Consequently, on this record, claimant did not meet his burden of establishing a causal connection between the injury and work, and he therefore did not satisfy the arises-out-of-employment prong of the work-connection test. Because both prongs of the test must be satisfied to some degree, the board erred in concluding that claimant's injury was compensable.

Reversed and remanded.

---

[3] Claimant did not present evidence to eliminate idiopathic causes for the injury, nor did the board base its decision on any such conclusion.