Argued and submitted May 14, affirmed August 20, 2003

In the Matter of the Compensation of
Pearlene Gavlik, Claimant.

AMERICAN MEDICAL RESPONSE,
*Petitioner,*

*v.*

Pearlene GAVLIK,
*Respondent.*

01-00383; A118712

76 P3d 117

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Arthur W. Stevens III argued the cause for respondent. With him on the brief was Black, Chapman, Webber, Stevens & Petersen.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

KISTLER, J., pro tempore.

## KISTLER, J., pro tempore

Claimant is an on-call emergency medical technician who was exposed to hazardous chemicals when she stopped to report an automobile accident. The Workers' Compensation Board (board) ruled that her injury arose out of and in the course of her employment. We affirm.

Claimant works up to 12 shifts a month as an on-call emergency medical technician (EMT). Each shift lasts 24 hours. Claimant begins each shift at 8:00 a.m., reporting to the station and preparing her ambulance for service. She then leaves the station house and returns to her home, where she remains for the rest of her shift unless she is called to duty. If she is called, she is required to return to the station house within 15 minutes. As a result, while at home, claimant remains in uniform and limits her activities in order to be able to report within a 15-minute time period.

Employer calls claimant on a radio to notify her when she needs to report for duty. Employer supplies the radio, and claimant is required to keep it charged and operational during her shifts. The charger for the radio is kept at the station house. Employer also provides all its employees with a copy of a policy and procedure manual. The manual contains a section entitled "Patient Care Standards" and a subsection entitled "Witnessed Accidents." That subsection directs "employees" who witness accidents to "report the accident to the communication center, including location, number of victims, number of cars involved, etc."[1]

On September 7, 2000, in the middle of one of claimant's shifts, she returned to the station house to charge the battery on her radio. After charging the battery, she began driving back to her house where she would remain on call. While driving home, claimant came upon an overturned tanker truck. No emergency personnel had arrived at the accident. Claimant parked her car about 80 to 100 feet away from the overturned truck and approached a bystander. The

---

[1] Other subsections within the section entitled Patient Care set out rules for EMTs to follow when they are providing aid to a patient. They apply to active duty EMTs who have been dispatched to a particular location.

bystander told claimant that the truck was leaking hazardous material. Claimant told the bystander that the area had to be evacuated. She got on her radio and tried, unsuccessfully, to radio the station to report the accident. Shortly afterwards, claimant heard a dispatch call sending emergency personnel to the accident and summoning her back to the station. Claimant left the accident and returned to the station. After returning to the station, claimant noticed a heavy feeling in her chest and a chemical taste in her mouth. She received oxygen and was transported to the hospital, where she was treated for chemical inhalation.

On an earlier occasion, claimant came upon a car accident on the way to the station house. She stopped, gathered information, and reported that information to the communications center. Later, claimant asked her supervisor what her responsibilities were in such a situation, a question to which her supervisor responded only that he "would have done the same thing."

Claimant filed a workers' compensation claim for the injury that she sustained when she inhaled toxic chemicals on September 7. Employer denied her claim on the ground that claimant was not acting within the course of her employment when the injury occurred. Claimant asked for a hearing, and an administrative law judge (ALJ) upheld the denial. He reasoned that "when on call the claimant's employment duties consist only of being constantly available to report in the event the primary EMT unit is dispatched." It followed, he reasoned, that "[a]nything she did beyond that was personal" and outside the "course and scope of her employment duties as an on call EMT when she was injured[.]"

On appeal, the board reached a different conclusion. It acknowledged that claimant may not have been required to stop to report the accident. It found, however, that she was returning from charging her battery, as she was required to do, and that stopping to report the accident was, if not required, consistent with her duties as an on-call EMT.[2] The

---

[2] The board reasoned:

"Although claimant, as an 'on call' EMT, may not have been required to stop at an accident scene to gather reporting information, the employer did not

board accordingly "conclude[d] that claimant was engaged in an activity within the boundaries of her work (gathering accident reporting information) when she was injured." It followed, the board ruled, that plaintiff's injury arose out of and in the course of her employment.

■■ Under ORS 656.005(7)(a), only injuries that "aris[e] out of and in the course of employment" are compensable. The question whether an injury arises "in the course of" employment focuses on whether "the time, place, and circumstances of the injury justify connecting the injury to the employment." *Robinson v. Nabisco, Inc.*, 331 Or 178, 186, 11 P3d 1286 (2000). The question whether an injury arises out of employment "tests the causal connection between [a] claimant's injury and a risk connected with [his or] her employment." *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997).

■ Although separately stated, both questions are part of a unitary "work-connection" test that asks whether the relationship between the injury and the employment is sufficiently close for the injury to be compensable. *Fred Meyer, Inc.*, 325 Or at 596. As the Supreme Court has explained, the unitary work-connection test does not "supply a mechanical formula for determining whether an injury is compensable." *Robinson*, 331 Or at 185. Rather, each case must be evaluated on its facts to determine if the circumstances of the injury are sufficiently connected to the employment to render the injury compensable. *Id.* Although a claimant must satisfy both parts of the test to some degree, the injury will be connected to the work, and thus compensable, if the facts supporting one part of the test are strong even though the facts supporting the other are weak. *Id.* at 186. The question

---

expressly limit the reporting requirements in its policy manual to 'active duty' EMTs. Moreover, when claimant had previously questioned her supervisor regarding her work responsibilities in such circumstances, she was led to believe that stopping at the scene of a witnessed accident was consistent with the duties of an 'on call' EMT."

Employer contends that the board's interpretation of the policy manual is inconsistent with its express adoption of "the ALJ's Findings of Fact." The ALJ, however, did not discuss employer's policy manual in the section of his opinion and order entitled Findings of Fact, although he did do so elsewhere. We do not perceive an inconsistency in the board's adoption of the ALJ's Findings of Fact and its construction of the policy manual.

whether an injury is sufficiently connected to work to be compensable presents an issue of law for the court. *See id.* at 187-90 (independently reviewing and reversing the board's determination that an employee's injury had not arisen out of and in the course of employment); *Halsey Shedd RFPD v. Leopard,* 180 Or App 332, 334, 44 P3d 610 (2002) (employing the same standard of review).

■     We begin with the question whether claimant's injury arose "in the course of employment." An injury arises in the course of employment when it

> "takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it."

*Fred Meyer, Inc.,* 325 Or at 598. We have previously recognized that an employee's "on-call" status, when combined with other circumstances, may be sufficient to say that the injury arose in the course of employment. *See Halsey Shedd RFPD,* 180 Or App at 337 (holding that an injury occurred in the course of employment when an on-duty firefighter was injured while walking toward his fire truck on his way to church and attempting to answer a pager); *Allen v. SAIF,* 29 Or App 631, 634-35, 564 P2d 1086, *rev den,* 280 Or 1 (1977) (assuming that an injury occurred in the course of employment when an on-call security officer was injured while traveling to the credit union on personal business).[3]

■     The connection to claimant's employment is far stronger here than it was in either *Halsey Shedd RFPD* or *Allen.* Unlike the claimants in those cases, the claimant in this case was not engaged in personal business when she came upon the accident. Rather, she was returning home after going to the station house to recharge the radio battery—an activity that was necessary to perform her job as an

---

[3] In *Allen,* we explained that, even though the injury may have occurred in the course of employment, "there is not sufficient connection of [the] decedent's personal errand with the employment to justify a holding that it arose out of the employment." 29 Or App at 635. Accordingly, we held that injury was not compensable. We reached a similar conclusion in *Halsey Shedd RFPD.* 180 Or App at 338-39.

on-call EMT and that could be accomplished only at the station house. Given employer's requirement that claimant keep her radio charged while she was on call, we conclude that claimant's trip to the station house to comply with her employer's requirement constitutes a special errand. *See Iliaifar v. SAIF*, 160 Or App 116, 122-23, 981 P2d 353 (1999) (holding that an employee who had been released from work because of a back injury was on a special errand when he complied with his employer's request to deliver an off-work authorization).[4]

During the course of that errand, claimant came upon the accident. Even if employer did not require claimant to stop and report the accident, her decision to do so was not such a significant departure from her work-related errand that it took her out of the course of her employment. *See Iliaifar*, 160 Or App at 123. Rather, as the board found, her actions were consistent with her job duties. The employee's manual could be read to require that claimant stop and report the accident, and her supervisor had led her to believe that stopping to report witnessed accidents was consistent with her duties as an on-call EMT.[5]

■     Having found that claimant's injury occurred in the course of her employment, we also conclude that her injury "ar[ose] out of" that employment. As noted, the question whether an injury arises out of employment tests the causal connection between a claimant's injury and a risk connected with employment. Here, the causal connection is strong. Stopping at an accident scene may, as it did in this case,

---

[4] The mere fact that an activity occurs while an employee is on call does not necessarily mean that it occurs in the course of employment. *See Halsey Shedd RFPD*, 180 Or App at 337; Arthur Larson and Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 14.05[6], 14-16 (2003). In concluding that claimant was in the course of her employment, we rely on the fact that she was performing an errand— charging the radio battery—that was required for her to serve as an on-call EMT.

[5] Claimant argues that employer's policy and procedure manual required her to report accidents that she witnessed. Employer counters that the manual applies only to active duty EMTs who are assigned to drive ambulances. The text of the manual supports claimant's view, and the context cuts in both directions. Although the text, read in context, is ambiguous, the board did not resolve the ambiguity. Rather, it concluded only that claimant's reading of the manual was reasonable. Similarly, it found that her conversation with her supervisor about an earlier incident "led [her] to believe that stopping at the scene of a witnessed accident was consistent with the duties of an 'on-call' EMT."

involve exposure to a variety of toxic substances. We note that this is not a case in which the personal nature of the on-call employee's activities defeats the requisite causal connection between the employee's injury and the risks associated with his or her work. *See Halsey Shedd RFPD*, 180 Or App at 339 (reasoning that the "risk that claimant's foot would slip on the dirt and gravel in his own driveway was not a risk 'distinctly associated' with being a firefighter"); *Allen*, 29 Or App at 635 (reasoning that "there is not sufficient connection of [the] decedent's personal errand with the employment to justify a holding that it arose out of the employment"). Rather, the risk of being exposed to toxic substances at an accident scene is precisely the sort of risk that is inherent in the nature of claimant's work. Having examined both parts of the statutory test, we agree with the board that there is a sufficient connection to claimant's work to hold her injury compensable.

Affirmed.