Argued and submitted January 28, affirmed June 9, 2004

In the Matter of the Compensation of
Georgia C. Lamb, Claimant.

TRI-MET, INC.,
*Petitioner,*

*v.*

Georgia C. LAMB,
*Respondent.*

01-01239; A120830

92 P3d 742

Travis L. Terrall argued the cause for petitioner. On the briefs were Lance M. Johnson, and Terrall & Terrall.

James Kirkpatrick argued the cause for respondent. On the brief were James Dodge and Raymond J. Bradley & Associates.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Employer seeks review of an order of the Workers' Compensation Board (the board) determining that claimant's injury claim is compensable. The issue is whether claimant was injured within the course and scope of her employment. We conclude that she was and affirm.

On January 8, 2001, claimant worked a shift as a bus driver for employer, a provider of public transportation. Claimant began her shift at employer's garage at 6:20 a.m., leaving her personal vehicle at the garage. Claimant worked until she was relieved by another driver at a stop along the bus route. The practice of relieving drivers at a location other than the garage where the original shift began is known as "road relief." The board found, pursuant to a collective bargaining agreement, that employer provides a road relief allowance to drivers because of the inconvenience of ending their shift at a location different from where it began. The "road relief" allowance is not considered compensation for time worked. At the time of her claim, claimant's road relief allowance was approximately $2 per day.

On that day, claimant finished her shift at 3:56 p.m. and boarded a different public bus, also operated by employer, to return to employer's garage to retrieve her vehicle.[1] Although claimant returned to the garage as soon as her shift was completed, she was not required by employer to do so. The nearest bus stop to the garage is across the street and approximately a half-block away. Claimant arrived at that stop approximately 30 minutes after being relieved. While disembarking from that bus, she fell and injured her left leg. Claimant filed a workers' compensation claim based on the injury. Employer denied the claim, and claimant requested a hearing. An administrative law judge (ALJ) set aside the denial of compensation for claimant's injury, concluding that claimant's injury arose out of and occurred in the course of her employment. On appeal, the board adopted and affirmed the ALJ's order. We review the board's legal conclusions for

---

[1] The record shows that as a general benefit of employment, employees and family members receive free passage on transportation operated by employer.

errors of law and its determinations on factual issues for substantial evidence. ORS 183.482(7), (8).

On review, employer makes two assignments of error. First, employer asserts that the board erred as a matter of law in its conclusion that claimant's injury arose out of and in the course of her employment. In employer's second assignment of error, it contends that the record does not contain substantial evidence to support the board's findings. We hold without further discussion that the board's findings are supported by substantial evidence. We accordingly write to address only the first assignment of error.

■ In order for an injury to be compensable under the workers' compensation law, it must "aris[e] out of" and occur "in the course of employment." ORS 656.005(7)(a). We view the two prongs of that compensability test as two parts of a unitary "work connection" inquiry that asks whether the relationship between the injury and the employment has a sufficient nexus so that the injury should be deemed compensable. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997). The requirement that the injury occur "in the course of" the employment relates to the time, place, and circumstances of the injury. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996). The "arising out of" prong tests the causal link between the worker's injury and his or her employment. *Id.* at 525-26. Both prongs must be satisfied to some degree, but neither is dispositive. *Fred Meyer, Inc.*, 325 Or at 596. The work-connection test may be satisfied if the factors supporting one prong of the statutory test are weak while factors supporting the other prong are strong. *Id.* at 596-97.

■ We first address whether claimant's injury occurred "in the course of" her employment. The Supreme Court explained in *Fred Meyer, Inc.*, 325 Or at 598, that

"[a]n injury occurs 'in the course of' employment *if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it.* 'In the course of' employment also includes a reasonable period of time after work for the worker to leave the employer's

premises, including the employer's parking lot. By 'reasonably incidental to' employment, we include activities that are personal in nature—such as a telephone call home or a brief visit with a coworker—as long as the conduct bears some reasonable relationship to the employment and is expressly or impliedly allowed by the employer."

(Emphasis added; citation omitted.)

In the present case, the board reasoned that,

"[w]hile claimant was not on the employer's premises when her shift ended (or when she was injured), she was still benefiting her employer by agreeing to end her shift at a different location than where she had started, *with the implied agreement* that she would eventually have to return to the garage to retrieve her vehicle. The employer knew that most of its drivers would return to their respective garages to retrieve their private vehicles after being relieved on the road, which put those drivers in a position to be injured after their shift ended. Furthermore, the employer provided employees with free public transportation, and it was customary for employees to use this free method of transportation to return to their vehicles."

(Emphasis added.)

■ Employer contends that once claimant's shift ended, the employer-employee relationship ended for the day, because, at the time of the injury, employer had no control over claimant's actions, and claimant was neither performing a service for employer nor was she on employer's premises. Accordingly, employer asserts that compensation for claimant's injury is precluded by the "going and coming" rule. Ordinarily, an injury sustained while a worker is going to or coming from work is not considered to have occurred "in the course of" employment. *Krushwitz*, 323 Or at 526-27. In *Fred Meyer, Inc.*, the Supreme Court said that

"[t]he reason for the 'going and coming' rule is that the relationship of employer and worker ordinarily is suspended from the time the worker leaves work to go home until he or she resumes work because, while going to or coming from work, *the worker is rendering no service for the employer*."

325 Or at 597 (emphasis added).

In the present case, we agree with the board's conclusion that claimant was in the course of her employment as a bus driver at the time of her injury. The time, place, and circumstances of claimant's injury reflect that she was involved in an activity reasonably incidental to her duties of employment. First, the injury took place within a reasonable period of time after claimant's shift ended. In *Fred Meyer, Inc.*, the court explained:

> " 'The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts. The rule is not confined to activities that are necessary; it is sufficient if they can be said to be reasonably incidental to the work. What constitutes a reasonable interval depends not only on the length of time involved but also on the circumstances occasioning the interval and the nature of the employee's activity.' 2 *Larson's Workers' Compensation Law* § 21.60(a) at 5-45 to 5-46 (footnotes omitted)."

325 Or at 599. Here, the board found that the period of time that it took for claimant to return to the garage was "a reasonable interval after working hours." As noted, employer specifically provided a road relief allowance to its drivers for the inconvenience involved in being relieved at a location different from where the shift began, and thus implicit in that service is the furnishing of a reasonable time to return to the bus garage.

Second, although claimant was not on employer's premises when the injury occurred, she was in a place where employer could reasonably expect her to be at the time of her injury. The board found that "employer knew that most of its drivers would return to their respective garages to retrieve their private vehicles after being relieved on the road, which put those drivers in a position to be injured after their shift ended." The board also found that employer provided employees with free public transportation, which was the customary method that drivers used to return to their personal vehicles.

Finally, the circumstances surrounding claimant's injury also support the conclusion that her actions were reasonably incidental to the fulfillment of her employment

duties. An activity is "reasonably incidental" to employment if it is "expressly or impliedly allowed by employer" and there is a "reasonable relationship to the employment." *Fred Meyer, Inc.*, 325 Or at 598-99. Here, the board determined that there was an implied agreement that claimant would return to employer's garage at the end of her shift. The board found that "Tri Met benefits from [the road relief] arrangement by paying [drivers] an amount substantially less than their wage while not having to provide transportation to return their drivers to their respective garages."

Nonetheless, employer contends that compensation for claimant's injury is precluded by the "going and coming" rule. In support of its assertion, employer cites *Alltucker v. City of Salem*, 164 Or App 643, 993 P2d 159 (1999). In *Alltucker*, the claimant, a firefighter and paramedic, was injured while riding his bicycle from one fire station to another after he had mistakenly reported to the wrong station for work because he had failed to check the schedule. We held that the claimant's injuries were excluded from coverage under the "going and coming" rule. In *Alltucker*, the claimant had not commenced his workday at the time of his injuries. In contrast, claimant's activity was governed by a collective bargaining agreement with employer, and it was an activity that provided a benefit to employer and was a part of claimant's job description. The difference in the facts of the two cases explains why the "going and coming" rule is inapplicable to this case. Here, claimant had not ended her work for employer. Her return to the garage to retrieve her personal vehicle was within the course of her employment because it was reasonably incidental to the performance of her ongoing employment duties for that day.

■■ We next address the issue of whether claimant's injury "arose out of" her employment. That requirement addresses whether a causal connection exists between claimant's injury and a risk connected with her employment. *Krushwitz*, 323 Or at 525-26. "[A] worker's injury is deemed to 'arise out of' employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker." *Fred Meyer, Inc.*, 325 Or at 601. In the present case, the board determined that there was a sufficient causal link

between claimant's injury and her employment because the injury occurred

> "while [claimant was] returning to the employer's premises to retrieve her personal vehicle after her shift had ended using a method of transportation acquiesced in by the employer. Traveling back to the garage by means of transportation offered free to employees by the employer exposed claimant to the risk of being injured on such transportation."

As the board found, claimant's job description as a bus driver required her to begin her shift at employer's garage, which was where she left her personal vehicle. Employer did not schedule claimant to end her shift by returning on the same bus to the garage where she began her shift. As a result, claimant was required by her employment duties to return to the garage after her shift had ended. That incident of employment exposed her to the risk of injury and satisfies the requirement that her injury arises out of her employment.

Our recent opinion in *Halsey Shedd RFPD v. Leopard*, 180 Or App 332, 339, 44 P3d 610 (2002), helps to inform our decision in this case. In that case, the claimant, a volunteer fireman, was on stand-by duty at his house. His pager went off. He reached down to take it out, slipped and fell to the ground injuring his ankle. We held that the connection between the risk of injury and an employee's work activities could not be merely coincidental and that the risk that claimant would slip on the dirt and gravel in his own driveway was not a risk associated with his duties as a firefighter or employer's work environment. In contrast to that case, here, " '[b]*ut for employer's directive*,' * * * claimant would not have been where [she] was, doing what [she] was." *Halsey Shedd RFPD*, 180 Or App at 338 (quoting *Robinson v. Nabisco, Inc.*, 331 Or 178, 189, 11 P3d 1286 (2000) (emphasis added; brackets in original)). In the present case, but for employer's directive that claimant begin her shift at employer's garage and end her shift at an alternative location along her bus route, claimant would not have been injured as she disembarked from the bus on her way back to employer's premises to retrieve her personal vehicle. Unlike in *Halsey Shedd RFPD*, there exists a causal connection between the risks of claimant's employment and her injury.

For both of the above reasons, we agree with the board that claimant's injury is compensable.

Affirmed.