Argued and submitted May 27, 2010, reversed and remanded for reconsideration
June 1, 2011

In the Matter of the Compensation of
Mary S. Sandberg, Claimant.

Mary S. SANDBERG,
*Petitioner,*

*v.*

JC PENNEY CO. INC.,
*Respondent.*

Workers' Compensation Board
0702441; A140276

260 P3d 495

James W. Moller argued the cause and filed the brief for petitioner.

Jerald P. Keene argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

Claimant seeks review of an order of the Workers' Compensation Board (board) denying her compensation for an injury she suffered while walking from her home to her garage to perform a work task. The board determined that claimant's injury was not compensable because it did not arise out of her employment. ORS 656.005(7)(a).[1] The relevant facts in this case are undisputed; thus, we review the board's determination for errors of law. ORS 656.298(7); ORS 183.482(8); *American Medical Response v. Gavlik*, 189 Or App 294, 298-99, 76 P3d 117 (2003), *rev den*, 336 Or 376 (2004). We reverse and remand.

As found by the board, the facts are as follows:

"On the date of injury, claimant worked as a custom decorator, selling window treatments, upholstery, bedding and pillows. Different fabric collections would alternate being on sale, with a collection sale typically ending on a Saturday and a new fabric collection sale beginning on a Sunday.

"The employer has a studio where claimant (and other custom decorators) worked one day per week. On other days, she was 'out on appointments' with clients, or working from home. She spent the majority of her working time traveling to and from her appointments and meeting with customers in their homes to sell the decorating products.

"Because she needed to have samples to show potential customers, she kept all of the current fabric samples, books and pricing guides in her van. She was required to have all current fabrics on hand and had previously been reprimanded for not having all of the current sale samples in her van when meeting with customers. In short, she was required to have an 'office * * * in [her] car.'

"Because she could not safely store all of the items in the vehicle at one time, she stored the excess items in her home garage. She was not allowed to store these excess products at the studio and was instructed by the employer to store the products at home, or any other place that kept the products safe and dry. Thus, she used her home garage to store

---

[1] ORS 656.005(7)(a) provides, in part, "A 'compensable injury' is an accidental injury * * * *arising out of and in the course of employment* requiring medical services or resulting in disability or death[.]" (Emphasis added.)

samples that would, from time to time, need to be changed out with other samples and materials that were kept in her van.

"On the Saturday before the date of injury, a sale collection had ended, with a new collection beginning the next day. Because of the fabric sale change, claimant needed to remove the 'old' fabrics from her van and replace them with fabrics for the new sale that were being stored in her garage. Claimant walked out her back door toward the garage to change the fabrics. When her foot came down, she 'felt something move.' Noticing that her dog was underfoot, she shifted to her other foot, lost her balance and fell. As a result of the fall, claimant sustained a right distal radius fracture."

(Record citations omitted; brackets and omission in original.) Although not recounted above, the record also contains undisputed evidence that claimant regularly performed some work tasks, such as preparing bids and other paperwork, in her home. Claimant sought compensation for her injury, which employer denied. An administrative law judge (ALJ) affirmed the denial, as did the board.

In order to be compensable, an injury must "aris[e] out of" and occur "in the course of" a claimant's employment; ORS 656.005(7)(a). Those requirements are two prongs of a unitary "work-connection" test. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997); *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996). Each prong must be satisfied to some degree. *Fred Meyer, Inc.*, 325 Or at 596; *Krushwitz*, 323 Or at 531.

The board determined that claimant's injury did not arise out of her employment and, therefore, it did not need to determine whether the injury occurred in the course of her employment. Relying on *Halsey Shedd RFPD v. Leopard*, 180 Or App 332, 44 P3d 610 (2002) (*Halsey*), the board reasoned that claimant's injury did not arise out of her employment because "[c]laimant was not exposed to [the] risk by virtue of her employment, but encountered [the] same risk any time that she stepped outside the door of her home" and because "the risk * * * arose from claimant's home environment,

which was outside of the employer's control." The board further concluded that claimant was not subject to the "traveling employee" rule, under which injuries arising from work travel are compensable, and that, even assuming she was subject to the rule, the risk of tripping over her dog did not arise from her travel.

On review, claimant argues that her injury arose out of her employment because employer required her "to work out of her home and to travel from her home to customer locations; therefore, the hazards of her home environment encountered in connection with the performance of her work, including her travel-related activities, were also hazards of her employment." In response, employer argues that claimant's injury did not arise out of her employment but, instead, arose from a " 'distinctly personal' " risk. (Quoting *Panpat v. Owens-Brockway Glass Container*, 334 Or 342, 352, 49 P3d 773 (2002).) Employer also argues that claimant was not a traveling employee. At most, according to employer, claimant was injured while walking to the garage where she was going to perform a work task, and, therefore, she was subject to the "going and coming rule," under which injuries suffered while commuting to and from work are generally not compensable.

As mentioned, in order for an injury to be compensable under Oregon's Workers' Compensation Law, the injury must "aris[e] out of" and occur "in the course of" employment. ORS 656.005(7)(a). The two prongs test different aspects of the connection between the injury and the employment. The requirement that the injury arise out of employment "tests the causal connection between [a] claimant's injury and a risk connected with [his or] her employment." *Fred Meyer, Inc.*, 325 Or at 601. "[A] worker's injury is deemed to 'arise out of' employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker." *Id.*

The requirement that the injury occur in the course of employment focuses on whether "the time, place, and circumstances of the injury justify connecting the injury to the employment." *Robinson v. Nabisco, Inc.*, 331 Or 178, 186, 11

P3d 1286 (2000). An injury occurs in the course of employment if "it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker is reasonably fulfilling the duties of employment or is doing something reasonably incidental to it." *Fred Meyer, Inc.*, 325 Or at 598.

The work connection test may be satisfied if the factors supporting one prong are strong, but those supporting the other are weak. *Redman Industries, Inc. v. Lang*, 326 Or 32, 35, 943 P2d 208 (1997). However, as mentioned, both prongs of the work connection test must be satisfied to some degree. *Fred Meyer, Inc.*, 325 Or at 596; *Krushwitz*, 323 Or at 531.

Because the board did not determine whether claimant's injury occurred in the course of her employment, that issue is not before us. The only issue on review is whether claimant's injury arose out of her employment. Thus, our focus is on whether claimant established a causal connection between her injury and her employment, that is, whether claimant's injury resulted from a risk connected to either the nature of her work or her work environment.

We begin our analysis with *Halsey*, on which the board relied. In *Halsey*, we held that an injury suffered by a claimant who fell as he walked across his driveway was not compensable because it did not arise out of his employment. The claimant was a firefighter. He was "on duty," which meant that he was required to respond to all emergency calls. 180 Or App at 334. The employer provided him with two work pagers and a work truck. Before he fell, the claimant was on his way to church. He planned to drive the work truck in case he was called to an emergency. As he walked across his driveway toward the truck while carrying a friend's child, one of his pagers went off. He reached down and took the pager out. His foot slipped on dirt and gravel, and he fell, injuring his ankle and leg. *Id.* at 335.

When asked what caused his fall, the claimant said only that he " 'slipped.' " *Id.* He specifically said that responding to the pager did not contribute to his fall.

The employer denied compensation, an ALJ set aside the denial, and the board adopted the ALJ's order and affirmed. On review, we analyzed whether the claimant had satisfied both prongs of the work connection test.

We began by determining whether the claimant's injury occurred in the course of his employment. Because the claimant fell while walking to the work truck and checking his pager, we held that the "in the course of" prong was satisfied. But, we emphasized that

"the time, place and circumstances [of the claimant's injury] also had a significant nonwork component. That is, claimant was primarily engaged in the personal activity of going to church, and many of the circumstantial facts involved (*e.g.*, the decision whether and when to go to church, carrying the child as he did so, the composition of his driveway, etc.) were not employment related at all."

*Id.* at 338. Therefore, we concluded "[claimant's] activity at the time [of the injury] is most accurately characterized as significantly personal in nature, with an incidental connection to work." *Id.*

We then determined whether the claimant's injury arose out of his employment. As mentioned, to arise out of employment, an injury must result from a risk connected with the nature of the work or a risk connected with the work environment. *Griffin v. SAIF*, 210 Or App 469, 473, 151 P3d 165 (2007). We first held that the risk that the claimant would fall on his own driveway was not connected with the nature of his work. "The risk that claimant's foot would slip on the dirt and gravel in his own driveway was not a risk 'distinctly associated' with being a firefighter." *Halsey*, 180 Or App at 339 (quoting *Phil A. Livesley Co. v. Russ*, 296 Or 25, 29-30, 672 P2d 337 (1983)). That risk "existed whenever claimant walked from his house across his driveway, for whatever reason he might choose to do so." *Id.*

We then held that the risk was not "one that inhered in claimant's work environment." *Id.* We emphasized that it was "significant that this was an off-premises injury and that the premises involved was claimant's own driveway." *Id.* at 339-40. We explained that, although work environments can expose workers to risks, the particular risk in *Halsey* was

"the risk of injury by slipping on the dirt and gravel in claimant's driveway, which was a risk that arose in claimant's home environment and was in claimant's control, not that of [claimant's] employer." *Id.*

In this case, the board relied heavily on *Halsey*. Citing *Halsey*, the board concluded that claimant's injury did not arise out of her employment because the risk of tripping over her dog was the result of a risk that existed "any time that she stepped outside the door of her home" and that arose from "[her] home environment, which was outside of the employer's control."

*Halsey* is instructive, to a point. As in *Halsey*, the risk involved in this case is not "distinctly associated" with claimant's employment. 180 Or App at 339. The risk that claimant might trip over her dog did not arise out of the nature of her work as a custom decorator. It was a risk that existed whenever claimant walked around her property. Thus, under *Halsey*, the risk did not result from the nature of claimant's work.

Accordingly, the question reduces to whether the risk resulted from claimant's work environment. *Halsey* does not answer that question. The injury in *Halsey* was an "off-premises" injury. As we emphasized, the injury occurred in the claimant's home environment, which was under his control, not his employer's. In this case, claimant's injury also occurred in her home, and her home was in her control, not her employer's. But, unlike in *Halsey*, claimant's injury is not as easily classified as an "off-premises" injury. That is because claimant's home environment was also, at times, her work environment.

As the board found, claimant worked in employer's studio one day a week. On other days, she met with customers in their homes and worked in her own home, where she prepared bids and other paperwork. Claimant was required to carry all the fabric samples from the collection that was currently on sale with her when she met with customers. She kept those samples in her van. She did not have space to safely store the other samples in her van, and employer did not provide her a place to store them. As a result, she kept them in her garage. Thus, claimant regularly worked at her

home, and she did so as a condition of her employment. During those times, her home was her "employer's premises." *See SAIF v. Scardi*, 218 Or App 403, 409 n 1, 180 P3d 56, *rev den*, 345 Or 175 (2008) (where care provider regularly worked in client's home, client's home was "employer's premises").

Therefore, this case is distinguishable from *Halsey*, because here claimant's home environment was, at times, her work environment and, as Professor Larson has explained, the risks of the home environment can be the risks of the work environment:

> "[O]nce it is established that the home premises are also the work premises * * *, it follows that the hazards of home premises encountered in connection with the performance of the work are also hazards of the employment.

> "* * * That the employee is a telecommuter or other home-based worker should not, in and of itself, make any difference. Was the risk of injury a risk of *this* employment? So long as the employment subjects the employee to the actual risk of injury, the argument follows that the injury should be compensable."

Arthur Larson and Lex K. Larson, 1 *Larson's Workers' Compensation Law* § 16.10[4], 16-37 (2009) (emphasis in original; footnote omitted).

Here, claimant was walking to her garage for the sole purpose of performing a work task. She fell while moving about an area in which she had to move about in order to perform the work task, given the conditions of her employment. Therefore, we conclude that claimant's injury resulted from a risk of her work environment. As such, it arose out of her employment.

The board's contrary conclusion reflects a concern about the employer's lack of control over the risk. That concern is unwarranted because, although the employer may not have had control over claimant's dog, it had control over whether claimant worked away from the studio. If, as a condition of employment, an employer exposes workers to risks outside of the employer's control, injuries resulting from the

risks can be compensable. Thus, if a worker meets with customers in their homes, injuries resulting from a risk in a customer's home can be compensable, even though the employer has no control over the customer's home. To the extent that employer control matters, the employer has control over whether, as a condition of employment, the worker is exposed to risks outside the employer's premises.

That idea underlies the "traveling employee rule," which provides that, when an employee is required to travel as a condition of employment, injuries resulting from activities necessitated by the travel can be compensable, even if the worker is not performing a work task at the time of injury. *Scardi*, 218 Or App at 408, 410. Thus, injuries from risks over which an employer has no control, such as the risk of injury from a hotel fire, can be compensable.

The idea also underlies an exception to the going and coming rule, under which, as mentioned, injuries suffered while commuting to and from work are generally noncompensable. *Dehiya v. Spencer*, 221 Or App 539, 546, 191 P3d 730 (2008). Under that rule, injuries suffered by workers going to and coming from work are noncompensable on the ground that the workers are not serving their employers while they are commuting. *Id*. An exception to the rule exists for injuries sustained by workers who are required to drive their own cars to work to use during the work day for the employer's benefit. *Jenkins v. Tandy Corp.*, 86 Or App 133, 137, 738 P2d 985, *rev den*, 304 Or 279 (1987), is illustrative.

In *Jenkins*, the claimant was hit by a car in the parking lot outside his employer's store as he walked from the store to his car to go home at the end of his work day. The employer required the claimant to have his own car at work to use for customer calls and deliveries during and after the store's hours. The board determined that the claimant's injury was noncompensable because the claimant had left the store to go home and the parking lot was outside of the employer's control. On review, this court reversed, holding that the going and coming rule did not apply because the claimant's travel to and from the store in his own car was a condition of his employment. 86 Or App at 137. We explained:

" 'Surely in this day of a highly motorized society we cannot cast the going and coming rule as a protective cloak over the shoulders of an employer who, for his own advantage, demands that the employee furnish the car on the job.' "

*Id.* (quoting *Smith v. Workmen's Comp. App. Bd.*, 69 Cal 2d 814, 825, 447 P2d 365 (1968)); *see also Liberty Northwest Ins. Corp. v. Over*, 107 Or App 30, 810 P2d 876 (1991) (holding that the claimant, who had been injured in a car accident while driving his own car from his home to a work site, was entitled to compensation because, as a practical matter, the employer required the claimant to use his car to travel between work sites during the work day). Accordingly, we concluded that, regardless of whether the parking lot was within the employer's control, the claimant's injury "arose out of and in the course of his employment." *Jenkins*, 86 Or App at 137. Notably, we reached that conclusion even though, had the claimant not been required to have his own car at work for work purposes, he may well have been in the same position—walking to his own car to go home—that he was in when he was injured.

This case is similar. If an employer, for its own advantage, demands that a worker furnish the work premises, the risks of those premises encountered in connection with the performance of work are risks of the work environment, even if they are outside of the employer's control, and injuries resulting from those risks arise out of the employment. Here, because employer did not provide space for claimant to perform all of her work tasks, she was required—as a condition of her employment and for the benefit of her employer—to work in her home and garage. Thus, those areas constitute claimant's work environment when she is working, and injuries suffered as a result of the risks of those environments, encountered when claimant is working, arise out of her employment. If claimant tripped over a dog and injured herself while meeting with a customer in the customer's home, her injury would arise out of her employment. The same is true here because claimant was where she was, doing what she was, because of the requirements of her employment.

Therefore, the board erred in concluding that claimant's injury did not arise out of her employment. Because the

board did not determine whether claimant's injury occurred in the course of her employment, we remand.

Reversed and remanded for reconsideration.