Argued and submitted August 17, 2006, affirmed January 24, 2007

In the Matter of the Compensation of
Ken Griffin, Claimant.

Ken GRIFFIN,
*Petitioner,*

*v.*

SAIF CORPORATION
and Accuracy Grinding, Inc.,
*Respondents.*

Workers' Compensation Board
0403854; A128985

151 P3d 165

Robert K. Udziela argued the cause and filed the briefs for petitioner.

David L. Runner argued the cause and filed the brief for respondents.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Leonard, Judge pro tempore.

BREWER, C. J.

BREWER, C. J.

Claimant seeks review of an order of the Workers' Compensation Board that affirmed an administrative law judge's (ALJ) determination that claimant did not suffer a compensable injury. The issue is whether claimant's injury arose out of and in the course of his employment. We affirm.

We take the facts as found by the ALJ and adopted, with supplementation, by the board. Employer is a grinding company that grinds steel plates and fixtures and occasionally grinds eight- to nine-foot-long industrial knives. Employer's work facility consists of two buildings—an office located in a house and a shop located across the driveway from the house. The owner, Rasmussen, and the longtime office manager, Armstrong, have offices in the house. The grinding is performed in the shop.

Claimant, a part-time employee, ultimately wanted to become a sword and knife maker. Claimant described "knife-grinding" as an "experiment for me for my own educational purposes" and "a personal project" done in his "spare time." Employer permitted claimant to use its shop and grinding equipment to work on knives and swords when he was not otherwise working. Claimant had access to all the shop equipment and worked on personal items during lunch breaks and his days off. Claimant kept some of those personal items at the shop.

Claimant's job duties included receiving deliveries of steel. Employer received deliveries of various weights and sizes. The larger deliveries were off-loaded by a crane operated by Rasmussen, a grinder, or a helper. Although there was a sign posted outside indicating that no deliveries were accepted during the lunch hour, deliveries were occasionally made during that time.

On May 19, 2004, claimant was not scheduled to work, and he received no wages that day. Claimant called employer that morning and received permission to grind a butcher knife that he had purchased the previous weekend. Employer did not grind that kind of knife as part of its business. Claimant came into the shop and began working on his

knife. Later in the morning, Rasmussen told claimant that he was leaving for lunch and that a steel delivery might arrive while he was gone. Rasmussen asked claimant if he would mind unloading the shipment if it arrived while Rasmussen was at lunch. Rasmussen told claimant to call him on his cell phone if claimant decided to leave while Rasmussen was still at lunch. Claimant agreed. Rasmussen commented, "I'm sorry to have you work on your day off."

When Rasmussen left for lunch, claimant was sanding the butcher knife. When claimant completed work on the butcher knife, he began working on a second knife of his own that he had stored at the shop. Claimant set up a hand grinder and began grinding that knife. After claimant had been grinding for about 15 minutes, the knife broke, launching a piece of the blade through claimant's safety glasses and into claimant's eye, rupturing the globe.

Claimant ran into the office and Armstrong called for emergency assistance. While paramedics were tending to claimant, Armstrong overheard one of the paramedics ask claimant, "Do you work here?" Claimant answered, "Yes, but I'm on my own time."

SAIF denied claimant's injury claim. After an evidentiary hearing, an ALJ found that claimant had met his burden to show that the injury arose out of his employment, although she opined that the work connection was "weak." However, the ALJ upheld SAIF's denial on the ground that claimant's injury did not occur in the course of employment. The board affirmed the ALJ's decision but held that claimant's injuries neither arose out of nor in the course of his employment.

■ On review, claimant argues that his injuries arose out of and in the course of his employment. He asserts that the circumstances of his injury satisfied, at least to some degree, each prong of the governing test and, therefore, the relationship between his injury and his employment was sufficient to justify compensation. Employer replies that "personal factors" produced claimant's injury and that the additional circumstances that the injury occurred in the work place while claimant was permissively using employer's

equipment did not make the injury sufficiently related to claimant's employment to warrant compensation.[1]

■ Because the pertinent facts are undisputed, we review the question whether claimant's injury was sufficiently connected to work to be compensable as one of law. *American Medical Response v. Gavlik*, 189 Or App 294, 298-99, 76 P3d 117 (2003), *rev den*, 336 Or 376 (2004). In order for an injury to be compensable under the workers' compensation law, it must "aris[e] out of" and "in the course of employment." ORS 656.005(7)(a). We view the two prongs of that compensability test as two parts of a unitary "work connection" inquiry that asks whether the relationship between the injury and the employment has a sufficient nexus so that the injury should be deemed compensable. *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 596, 943 P2d 197 (1997). The requirement that the injury occur "in the course of" the employment relates to the time, place, and circumstances of the injury. *Krushwitz v. McDonald's Restaurants*, 323 Or 520, 526, 919 P2d 465 (1996). The "arising out of" prong tests the causal link between the worker's injury and his or her employment. *Id.* at 525-26. Both prongs must be satisfied to some degree, but neither is dispositive. *Fred Meyer, Inc.*, 325 Or at 596. The work-connection test may be satisfied if the factors supporting one prong of the statutory test are weak while factors supporting the other prong are strong. *Id.* at 596-97.

■ We first address the issue of whether claimant's injury "arose out of" his employment. "[A] worker's injury is deemed to 'arise out of' employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker." *Id.* at 601.

As to the "arising out of" prong, the board said:

"[C]laimant's injury did not arise out of his employment. An injury is deemed to arise out of employment if the risk of the injury results from the nature of his or her work, or when it originates from some risk to which the work environment

<hr>

[1] Employer also argues that claimant's injury is not compensable because it occurred during a "recreational activity" under ORS 656.005(7)(b)(B). The board did not reach that issue and, likewise, we find it unnecessary to do so.

exposes the worker. We acknowledge claimant's argument that being struck in the face with metal is an inherent workplace risk when grinding metal. The employer did not grind butcher knives; claimant did not grind butcher knives as part of his employment. As such, the record does not establish that being struck with a broken butcher knife blade was a workplace risk in a shop that did not, as part of its business, grind butcher knives."

(Internal citation and quotation marks omitted.)

Claimant asserts that, because he was on the employer's premises and permissively using its equipment when he was injured, the injury arose out of his employment. Claimant relies on this court's decision in *Freightliner Corp. v. Arnold*, 142 Or App 98, 919 P2d 1192 (1996). The claimant in that case worked for the employer, a truck cab manufacturer, as a painter's helper. His job required regular use of sprayed acid primer and other organic compounds that are capable of causing respiratory irritation. The claimant and other workers did not regularly use respiratory protective equipment while spraying primers in the open work area, which had fresh air ventilation. The claimant's job also required him to work in close proximity to an enclosed paint booth. He had access to the interior of the booth but was neither trained nor authorized to use it, nor had he been fitted for a fresh air supply mask to be used while inside the booth.

The claimant brought a helmet to work. During his shift, he sanded the helmet and prepared it for painting. The employer had a practice of allowing employees to complete personal work during work hours if the nature of the personal work was of the type the employees typically performed on the job and a policy of requiring a work order to do this. The claimant and his supervisor spoke briefly about the helmet while the claimant was sanding it during a break. The supervisor told the claimant to hurry up and to do the work on the claimant's own time. Between that break and the lunch break that followed, the claimant painted the helmet with acid primer. While doing so, the claimant did not wear a respirator. In the course of spraying the primer, the claimant shot a burst of primer that surrounded him with a cloud of spray exceeding by four times his normal exposure to acid spray.

The claimant then obtained permission from a coworker to use the paint booth and related equipment to finish painting the helmet. He used the coworker's equipment, including the coworker's respirator, which did not fit well, and he completed the painting on his next break. He returned to his regular work and completed painting one or two more truck cabs before leaving.

On the way home, the claimant began experiencing chills. Other symptoms developed during the night. The next day, he sought medical treatment. The employer denied his claim for workers' compensation benefits. The board set aside the denial, concluding that the claimant had established that his occupational disease claim arose out of and in the course of his employment.

On review, we upheld the board's decision. As to the "arising out of" component, we concluded that substantial evidence supported the board's finding that the risks associated with the claimant's employment included exposure to irritating vapors from sanding and priming work. Although the claimant was injured while on a personal project, the injury occurred by means of the use of the employer's equipment in accordance with an employer policy permitting employees to use work equipment for personal projects.

Relying on *Freightliner Corp.*, claimant challenges the board's conclusion that his injury did not arise out of employment because "being struck with a broken butcher knife blade was a workplace risk in a shop that did not, as part of its business, grind butcher knives." Claimant argues:

> "In [*Freightliner Corp.*], the risk of harm was exposure to chemicals while painting truck cabs, not helmets. In the case at bar, the 'risk of harm' inherent in a grinding shop is being hurt by flying metal—*wherever it came from*—including claimant's 'incidental' use of the equipment for a permitted task. If Arnold's respiratory problems—caused by his use of employer's equipment on *his personal helmet*— 'arose out of' his employment with Freightliner, [claimant's] injury to his eye, also using his employer's equipment on his personal knife, 'arose out of' his employment."

(Emphasis in original.)

Employer counters that, unlike in *Freightliner Corp.*, here, claimant's

> "personal knife presented a risk that was significantly different from that associated with the regular work claimant performed for employer. The employer did not grind swords or knives as part of its business. Rather, it performed grinding of much larger surfaces—steel plate, fixtures, and industrial blades that were eight or nine feet long."

For that reason, and because claimant acknowledged that he was performing the task for his own educational purposes, employer asserts that the injury did not arise out of his employment.

Although there is some merit to employer's argument, on balance we agree with claimant that this case is similar to *Freightliner Corp.* with respect to the "arising out of" prong. In both cases, the claimants' injuries arose from permissive use of the employer's equipment to perform a task on personal items that the claimants had introduced into the workplace. If those circumstances were sufficient to satisfy the "arising out of" prong in *Freightliner Corp.*, they also suffice here. However, we agree with the ALJ that the connection is weak because claimant's avocational activity played a significant role in his injury. It follows that the factors supporting the "in the course of" employment prong must be strong for claimant's injury to be compensable. *See Phil A. Lively Co. v. Russ*, 296 Or 25, 28, 672 P2d 337 (1983).

We next address whether claimant's injury occurred "in the course of" his employment. The Supreme Court explained in *Fred Meyer, Inc.*, that

> "[a]n injury occurs 'in the course of' employment if it takes place within the period of employment, at a place where a worker reasonably may be expected to be, and while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it. 'In the course of' employment also includes a reasonable period of time after work for the worker to leave the employer's premises, including the employer's parking lot. By 'reasonably incidental to' employment, we include activities that are personal in nature—such as a telephone call

home or a brief visit with a coworker—as long as the conduct bears some reasonable relationship to the employment and is expressly or impliedly allowed by the employer."

*Id.* at 598-99.

With respect to the "in the course of" prong, the board said:

"Claimant was on the employer's premises at the time of his injury. However, he was not on the employer's premises for any work-related reason. Rather, he chose on that day to go to the employer's shop for a purely personal reason. He was not scheduled to work and was not compensated for his time spent in the shop that day. Claimant's knife-grinding activity bore no reasonable relationship to the employment, although it was expressly allowed by the employer. Consequently, we do not find that claimant's injury occurred 'in the course of' his employment."

Claimant asserts that the board erred in its conclusion because "[e]mployer's request that claimant engage in work activity *for the benefit of the employer* transformed claimant's presence on employer's premises from that of 'guest' to that of 'employee.' " (Emphasis in original.) According to claimant, his injury was sufficiently related to the time, place, and circumstances of his employment to justify compensation, because the injury occurred on employer's premises, claimant was on those premises with permission, employer supplied the equipment claimant was using when he was injured, employer permitted the injury-producing activity, employer asked plaintiff to perform work, if necessary, claimant agreed to perform that work, claimant's injury was of a type that was a risk of using grinding equipment, and employer's business is grinding steel.

Employer replies that the character of claimant's presence did not change, because he was free to leave employer's premises at any time before the steel shipment arrived or Rasmussen returned from lunch. Instead, employer argues, the injury occurred in the course of a personal activity on claimant's personal time and without any significant relationship to claimant's employment. Claimant rejoins that, whether he was free to leave is immaterial,

because all employees are ultimately "free to go." What matters, claimant says, is that he agreed to unload the steel delivery if it arrived while Rasmussen was at lunch; that agreement transformed him from "guest" to "worker."

We disagree with claimant's argument. Although the injury occurred on employer's premises while claimant was permissively using employer's equipment, the other pertinent circumstances point in a different direction. The injury-producing activity was not performed for employer's benefit, it was performed on a day off, it was not an activity for which claimant was paid, and it was an activity as to which employee was on a personal mission of his own. Claimant's agreement to remain on the employer's premises was subject to the understanding that he was free to leave—without performing any work for employer—when his personal mission ended. Stated differently, claimant's reason for being and remaining on employer's premises was personal; it was not "reasonably incidental" to his waiting for a possible steel delivery. *See Fred Meyer, Inc.*, 325 Or at 598 (An injury occurs "in the course of" employment if it takes place "while the worker reasonably is fulfilling the duties of the employment or is doing something reasonably incidental to it."). Although employer permitted claimant to engage in the personal activity, it lacked a "reasonable relationship to the employment." *Id.* at 598-99. Accordingly, the board correctly concluded that claimant's injury did not occur in the course of employment and that the injury was not compensable.

Affirmed.