Argued and submitted July 23, 2007, affirmed March 12, 2008

In the Matter of the Compensation of
Barbara R. Scardi, Claimant.

SAIF CORPORATION
and HCW Clients,
*Petitioners,*

*v.*

Barbara R. SCARDI,
*Respondent.*

Workers' Compensation Board
0406938; A133038

180 P3d 56

David L. Runner argued the cause and filed the briefs for petitioners.

Brent Wells argued the cause for respondent. With him on the brief was Harder, Wells, Baron & Manning, P.C.

Before Haselton, Presiding Judge, and Rosenblum, Judge, and Deits, Judge pro tempore.

ROSENBLUM, J.

## ROSENBLUM, J.

Employer seeks review of an order of the Workers' Compensation Board (the board) reversing the order of an administrative law judge (ALJ) denying compensability. The issue is whether claimant was a traveling employee at the time of her injury and, if so, whether she was, nevertheless, "engaged in a distinct departure from [her] employment on a personal errand" at that time. *Sosnoski v. SAIF*, 184 Or App 88, 90, 55 P3d 533, *rev den*, 335 Or 114 (2002). We review the pertinent factual findings for substantial evidence and the legal conclusions for errors of law. ORS 656.298(7); ORS 183.482(7), (8). Because we conclude that plaintiff was a traveling employee who was not on a distinct departure from her employment on a personal errand when she was injured, we affirm the board's order.

We summarize the facts as found by the board, together with other undisputed evidence. Claimant was employed as a home-care provider for a client with traumatic brain injury. She cleaned her client's home and prepared his meals. She was authorized to work a set number of hours each month and was compensated with an hourly wage. As part of her responsibilities, she also drove him to appointments, to the grocery store, and to a monthly brain trauma class that she attended with him. Although the class was for the client's benefit, claimant believed that her attendance improved her understanding of the client's situation.

On the day of claimant's injury, she drove her client from his home, a few miles outside of Wilbur, Oregon, to a grocery story in Sutherlin. Because her client was nearing self-sufficiency and his shopping list was short, claimant dropped him off to practice shopping on his own. Claimant told her client that, while he was shopping, she was going to visit Michelle Orth, claimant's daughter-in-law's sister, to give her information about the upcoming brain injury class. Claimant wanted to make arrangements for Orth to take her client to the class so that she could make an out-of-town trip to visit her mother, who suffered from Alzheimer's disease. Although she had previously asked Orth to cover the class for her, she had not provided her with the details. According to claimant, her client agreed that Orth could take him to the

class and understood that, partly to save time, claimant would visit Orth to discuss the details while he was shopping.

After dropping her client off at the grocery store, claimant drove about a mile from the grocery store to Orth's home. When she arrived, Orth was preparing to leave to attend a parade in Sutherlin with her baby. Orth and claimant visited for about 20 minutes. Claimant first told Orth the details regarding the class, and then they discussed other topics. Since they were leaving at the same time, Orth asked claimant to help by carrying the baby to the car while she carried a car seat and diaper bag. As claimant was walking down the front steps to the driveway, she tripped on a tree root and fell. The baby was not harmed, but claimant fractured her right hip and was transported to a hospital by ambulance. The next day, claimant had surgery to repair the fracture.

Claimant subsequently filed a workers' compensation claim, which was denied by the employer on the ground that claimant's "injury did not arise out of or occur within the course of [her] employment." Claimant requested a hearing before an ALJ. The ALJ determined that claimant was personally motivated to go to Orth's home so that she could arrange to visit her mother and, thus, she was on a personal errand and not acting in the course of her employment at the time of the injury. The ALJ also found that the injury occurred while claimant was carrying the baby, an activity that served no purpose for the employer and was not a risk related to her job duties. Therefore, the ALJ concluded that the injury did not arise out of claimant's employment. Accordingly, the ALJ determined that claimant had not established that her injury was compensable. *See* ORS 656.005(7)(a) (to be compensable, an injury must arise out of and occur in the course of employment).

Claimant appealed the ALJ's order. She argued to the board that the ALJ erred in failing to find that she was a traveling employee at the time of her injury. *See Sosnoski*, 184 Or App at 93. Claimant further argued to the board that her injury was compensable because, while she was visiting Orth, she was continuously acting within the course of her employment as a traveling employee not "engaged in a distinct departure on a personal errand." *Id.* (quoting *Proctor v.*

*SAIF*, 123 Or App 326, 330, 860 P2d 828 (1993)). She also argued that the ALJ erred by concluding that her injury did not arise out of her employment, as tripping while walking is a risk reasonably related to travel.

Employer defended the ALJ's decision and disputed that claimant was a traveling employee at the time of her injury because "[c]laimant's decision to hold [Orth's] baby and her attempt to carry it out to the car was not reasonably related to her travel status." A majority of the board reversed the ALJ's order, reasoning:

> "[W]e find that the client's home was the employer's premises for purposes of determining whether claimant was a traveling employee. Accordingly, because claimant's work included travel away from the client's home on a regular basis, we further find that she was a traveling employee when she was injured before returning to client's home. * * * Here, because we have determined that travel away from the employer's premises was a part of claimant's employment, she was a traveling employee at the time of her injury. Therefore, the pivotal question is whether claimant's activity at the time of the injury was an activity that her employer reasonably could expect of a traveling employee and whether the activity that resulted in the injury was reasonably related to claimant's travel status.

> "In this case, there is no evidence that claimant's activity at the time of her injury (visiting [Orth]) was inconsistent with the business trip's purpose (taking the client to a grocery store) or the employer's directives. In fact, claimant visited [Orth], while waiting for the client to shop, to inform [her] about the time and place of the next brain trauma class. Under these circumstances, we find that claimant's activity at the time of her injury was reasonably related to her travel status and could have been reasonably expected by her employer."

(Citations, footnotes, and internal quotation marks omitted.) A dissenting board member expressed doubt that claimant was a traveling employee and opined that, even if claimant had traveling employee status, she sustained her injury while on a distinct departure for a personal errand and thus not while in the course of her employment. The majority of the board remanded the claim to employer for processing and awarded attorney fees to claimant.

■ ■    For an injury to be compensable under Oregon's workers' compensation law, it must arise out of and occur in the course of employment. ORS 656.005(7)(a). We apply a "unitary work-connection test" in which those elements are part of a single inquiry to determine whether the connection between the injury and the work is sufficient to make the injury compensable. *Sosnoski*, 184 Or App at 92-93 (citing *Norpac Foods, Inc. v. Gilmore*, 318 Or 363, 366, 867 P2d 1373 (1994) (the unitary work-connection test is designed to assess the sufficiency of the relationship between a claimant's injury and employment)). Each element of the inquiry tests the connection in a different manner; the "in the course of" element concerns the time, place, and circumstances of the injury, while the "arise out of" element concerns the causal connection between the injury and employment. *Norpac Foods, Inc.*, 318 Or at 366.

■    A traveling employee is considered to be continuously acting in the course of employment unless the employee has engaged in a distinct departure on a personal errand. *Sosnoski*, 184 Or App at 93 (citing *Proctor*, 123 Or App at 330; *Slaughter v. SAIF*, 60 Or App 610, 654 P2d 1123 (1982)). An activity is a distinct departure if it is not reasonably related to an employee's travel status; an employee's injury does not occur "in the course of" employment if the employee is engaged in an activity that is not reasonably related to the employee's travel status. *Id.* (citing *Savin Corp. v. McBride*, 134 Or App 321, 325, 894 P2d 1261 (1995)).

■ ■    " '[A] worker's injury is deemed to "arise out of" employment if the risk of the injury results from the nature of his or her work or when it originates from some risk to which the work environment exposes the worker.' " *Griffin v. SAIF*, 210 Or App 469, 473, 151 P3d 165 (2007) (quoting *Fred Meyer, Inc. v. Hayes*, 325 Or 592, 601, 943 P2d 197 (1997)). It follows that, in the case of a traveling employee, an injury arises out of employment if the risk of the injury results from the nature of the travel or originates from some other risk to which the travel exposes the worker.

On appeal, employer makes several distinct arguments. First, employer argues that, because of the local nature of her work-related travel, she was not a traveling

employee when she visited Orth's home. Employer further contends that, even if claimant was a traveling employee, her trip to Orth's home was a distinct departure because claimant did not need to make a personal visit to deliver the information and because her motivation was to ask a personal favor. In other words, employer contends that the board erred by concluding that claimant was acting in the course of her employment when she visited Orth. Employer also contends that carrying the baby constituted a distinct departure. We understand employer to argue that the board erred by concluding that claimant's injury arose out of her employment. In connection with that contention, employer argues that the board's finding that there was no evidence to suggest that carrying the baby caused or contributed to claimant's injury was not supported by substantial reason.

Employer does not dispute the board's finding that claimant's work entailed travel away from her employer's premises,[1] or that her duties included waiting while her client shopped. *See SAIF v. Reel*, 303 Or 210, 216, 735 P2d 364 (1987) ("Workers' compensation should be awarded to a worker when the employe[e] has been directed, as part of his duties, *to remain at a particular place or locality* until directed otherwise or for a specified length of time." (Emphasis added.)). Employer, nevertheless, argues that, because of its local nature, claimant's traveling employee status should be limited to the time during which she was actually transporting her client. We disagree.

When an employee's work entails travel away from an employer's premises, the employee becomes a traveling employee, even if the travel is local and of limited duration. *See McBride*, 134 Or App at 323-26 (traveling employee's work entailed driving to customers' premises and returning home each evening; injury sustained while running a banking errand on the way home was compensable); *PP&L v. Jacobsen*, 121 Or App 260, 263, 854 P2d 999, *rev den*, 317 Or

---

[1] The board held that claimant never worked on DHS premises (the entity that paid her), but that most of her work as an in-home care provider occurred in her client's home. Employer does not dispute that finding. Accordingly, we agree with the board that her client's home was the "employer's premises" for the purpose of determining whether claimant was a traveling employee.

583 (1993) (traveling employee rule is not limited to employees who travel overnight). Moreover, a traveling employee need not be actually working when injured for the injury to be compensable. *See Sosnoski*, 184 Or App at 93-95. Here, claimant's work entailed travel away from her employer's premises. Although she was not paid for the time she waited while her client shopped, she was, nevertheless, required to wait in order to drive her client home when he finished shopping. *See Slaughter*, 60 Or App 610, 616, 654 P2d 1123 (1982) (claimant on a "forced layover" considered a traveling employee). Under those circumstances, the board correctly concluded that she retained her traveling employee status while away from her client's home even when she was not actually transporting her client.

Next we examine whether claimant was engaged in a distinct departure on a personal errand and thus not acting in the course of her employment when she fell and suffered an injury. An activity is a distinct departure on a personal errand if it is not reasonably related to an employee's travel status. *Sosnoski*, 184 Or App at 94 (citing *Slaughter*, 60 Or App at 615). If the activity is one that an employer might reasonably approve of or contemplate that a traveling employee will engage in, and the activity is not inconsistent with the travel's purpose or the employer's directives, it is not a distinct departure. *Id.* at 94-95. Here, the board found no evidence that claimant's visit to Orth was inconsistent with the purpose of taking her client to the grocery store or with her employer's directives. It further found that claimant's visit to Orth was an activity that could have been reasonably expected by her employer. Those conclusions are supported by substantial evidence.

Employer nevertheless contends that claimant's visit to Orth was a distinct departure on a personal errand because "[c]laimant gave no explanation whatsoever for why a personal visit was required to deliver [the] information [about the brain trauma class], as opposed to a phone call." Whether a traveling employee could have accomplished a task by another means, however, does not determine whether the activity constitutes a distinct departure on a personal errand. *See Proctor*, 123 Or App at 331 ("Employer need not approve a traveling employee's travel to or participating

in an after-work relaxation activity * * * even if the job does not cause stress, and even if the employee chooses an activity that is not related to work."). The relevant inquiry regarding distinct departures is whether the injury-causing activity is reasonably related to—not whether it is mandated by—the claimant's employment.

Employer also argues that claimant's visit to Orth was a distinct departure on a personal errand because claimant presented no evidence that it was her responsibility to find coverage during her absence, and the evidence established that she wanted to find coverage so that she could visit her mother. An activity need not be directed by an employer in order for it to be work-related. *See, e.g., First Interstate Bank v. Clark*, 133 Or App 712, 894 P2d 499, *rev den*, 321 Or 429 (1995) (injury at a meeting was found to be compensable even though the claimant's employer did not require her to attend the meeting, which was held during nonworking hours). This is especially true in the case of a traveling employee, whose injury while on a personal errand, as noted above, is compensable so long as the errand is reasonably related to claimant's travel status. *See, e.g., McBride*, 134 Or App at 325.

We agree with employer that obtaining a substitute to transport the client to the brain trauma class would personally benefit claimant by allowing her to visit her mother and retain her employment. However, employer also benefitted by claimant ensuring that her job duties would be fulfilled while she was away. *See Slaughter*, 60 Or App at 613 (a combined business and social interlude that does not change the business character of the travel does not affect an employee's travel status); *see also Clark*, 133 Or App at 716 ("[T]he fact that an activity is directed at keeping one's job does not, in itself, make the activity a personal mission.").[2]

---

[2] Employer's reliance on *Griffin* to argue that claimant was not acting in the course of her employment is unavailing. In that case, the claimant's injury occurred on his employer's premises on his day off while the claimant was permissively using his employer's equipment. We held that the claimant's injury did not occur in the course of his employment because "it was an activity as to which employee was on a personal mission of his own." 210 Or App at 478. *Griffin* did not involve a traveling employee or a distinct departure and, thus, the case provides little guidance in assessing whether claimant's injury in this case occurred in the course of her employment.

Moreover, the trip was minimal in both time and space, as it was intended to have been completed in the time it would have taken claimant's client to shop. *See Slaughter*, 60 Or App at 616 (employee on a "forced layover" who visited a tavern to " 'kill time' " not on a distinct departure). Under these circumstances, we hold that the board was correct in concluding that claimant's visit to Orth's home was reasonably work-related and therefore not a distinct departure on a personal errand.

■ Having determined that claimant did not lose her traveling employee status by the mere fact that she visited Orth, we turn to whether claimant's carrying Orth's baby, nevertheless, turned her visit into a distinct departure on a personal errand. Employer argues that claimant's activity of carrying the baby "had absolutely nothing to do with claimant's employment." As noted above, a traveling employee's injury arises out of her employment if the risk of the injury results from the nature of the travel or when it originates from some risk to which the travel exposes the worker. *See Griffin*, 210 Or App at 473. Thus, the threshold question is whether carrying the baby caused plaintiff's injury. If it did, then we must consider whether that activity was reasonably related to claimant's travel status. If it did not, and plaintiff's injury was, rather, caused by her tripping over a tree root, then claimant's injury arose out of a risk to which her travel exposed her.

Here, the board found that "there is no evidence that carrying the baby caused or contributed to claimant's injury. Instead, the record establishes that claimant fell when she tripped over a tree root, after leaving her friend's house." The board was not persuaded that "walking from her friend's house to a car, and tripping over a tree root on the way, amounted to a distinct departure from claimant's travel status."

Employer contests the board's reasoning, pointing to claimant's statement to an investigator about her injury.

"Okay. Just the injury then, well, um, I was walking out of the house after making a delivery of a message and as I was going out they had had a baby that was born and the baby was pretty excited. I, I don't know if it was the outfit I had

but, you know, but babies and bonding and cuddling and all that * * * they, um let me hold the baby. They were going outside and so [I] went outside and I turned to go their direction but there was still, there was nobody around me when I had done this and I had tripped on a root of a tree and I landed straight down on the root of the tree and according to the doctor it didn't matter whether I was 60, 40, 30 or how old I was it had to do with the fact that the root was like kind of pointed. It was not like a smooth surface root that you could have just fallen on and just got a bruise.

"* * * * *

"Now I did ask the doctor, now this is probably a question that you'll probably be thinking, well if I didn't have the baby then maybe this wouldn't have happened, that's not true. He said in fact I probably would have broke my clavicle, which was my arm that goes up to the, up to my, um, what is that main bone that goes, hangs onto your shoulder * * * because of the simple reason that the natural thing for a person to do when they fall is to throw their arms out and I would have broke my arm."

Claimant also described her fall to the ALJ:

"Q.  Did you trip on the root?

"A.  I did.

"Q.  And that's when you fell?

"A.  I tried to recover and the foot just wouldn't move, and down I went.

"Q.  Can you describe how you fell?

"A.  Right foot caught [on the root], pivot, stumble, foot still caught, fell, and foot still caught.

"Q.  How did you land on the ground?

"A.  Like, fetal position.

"Q.  What happened to the baby?

"A.  Baby I held real tight and when I landed on the ground my arm opened up and I saw the baby roll. There wasn't anything I could do to hold the arm.

"Q.  What part of your body hit the ground?

"A. First, was my hip.

"Q Your right hip?

"A Yeah. I landed on my fanny."

Employer contends that, given claimant's statement to the investigator and at the hearing, "the board majority's statement that the record contains no evidence that carrying the baby caused or contributed to claimant's injury is incorrect or at least requires further explanation to be supported by substantial reason." Employer urges us to remand the case for the board's reconsideration.

We decline to do so. Claimant testified that "it's not true" that the accident would not have happened if she had not been carrying the baby, and her testimony at the hearing established that her fall was caused when her foot was caught beneath a tree root. We agree with the board that there is no evidence that carrying the baby, however excited the baby was, caused or contributed to claimant's foot getting caught under a tree root. The fact that claimant's doctor informed her that she might have sustained a different injury had she not been carrying the baby is speculative, and, in any event, it is not relevant to the pertinent question: whether claimant would have tripped and fallen had she not been carrying the baby. The board's finding that her injury was caused by the tree root and not by the baby is supported by both substantial evidence and reason.

In summary, claimant was a traveling employee while she waited for her client to shop, and she did not lose that status by virtue of the fact that she was not actually transporting her client when the injury occurred. She was acting in the course of her employment when she visited Orth's home. That visit was reasonably work-related and not a distinct departure on a personal errand. Because tripping while walking is a risk inherent in travel, claimant's injury also arose out of her employment. Claimant's injury is compensable.

Affirmed.